ARTHUR G. THOM v. CLIFFORD J. THOM AND OTHERS.[1]

November 1, 1940.

No. 32,575.

[1]Reported in 294 N. W. 461.

462

■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■   ■■■■■

*Flynn & Mork,* for appellant.
*Hughes & Hughes,* for respondents Thom.

PETERSON, JUSTICE.

This is an action for the partition of a 160-acre farm near Rushmore in Nobles county.

The defendant "Estate of Albina D. Thom" was joined as the holder of a mortgage on which there was due $6,000. The parties stipulated that the premises were subject to the mortgage for the amount stated.

One William C. Thom was the common source of title. On September 1, 1926, he and his wife conveyed the land by warranty deed to his brothers, Arthur G. Thom, the plaintiff, and Frank V. Thom, subject to a mortgage for $7,000 in favor of his father, which his mother then owned under the final decree of the probate court assigning the same to her pursuant to the will of the father, who had died testate.

After the execution of the deed, William C. Thom placed it in Frank V. Thom's safety box in the bank at Rushmore, of which William was cashier. Both William and Frank had access to the box. Plaintiff did not have access to the box and did not see the deed until it was produced at the trial. The deed was not recorded until May 31, 1933. The defendant Clifford J. Thom and his father, Frank V. Thom, were informed, when they offered for record a warranty deed dated March 21, 1933, by which Frank V. and his wife conveyed the land to Clifford and his wife, that the title still stood in the name of William C. Thom. Thereupon they searched Frank's papers and

found the William C. Thom deed in the tin box formerly in the safety deposit vault.

The deed clearly showed that both plaintiff and Frank V. Thom were named as grantees. Plaintiff's name had been erased, but not so effectually as entirely to obliterate the fact that it was in the deed as it was originally drawn. It was not shown when or by whom the erasure was made. Clifford did not notice the alteration when he found the deed. He noticed the erasure when he took the deed to the register of deeds, but did not pay particular attention to it. He did not observe that the erasure was of Arthur's name.

The William C. Thom deed as altered and the deed from Frank V. Thom and wife to Clifford and his wife were both recorded on May 31, 1933. The record title appeared to be in Clifford and his wife from that time.

Plaintiff claimed title to an undivided one-half of the premises under the William C. Thom deed in which he and his brother Frank were named as grantees. Defendants Clifford and his wife claimed title to the entire property. One-half they claimed under the William C. Thom deed and the deed from Frank V. Thom and his wife to them as grantees. The other half, the half claimed by plaintiff, they claim in virtue of an equitable estoppel on the part of plaintiff and his wife to claim or assert title to any part of the land. It is conceded that Clifford and his wife have title to an undivided one-half under the deeds. That they have title to the other one-half by estoppel is denied. The only question in the case is whether or not Clifford and his wife acquired title to that one-half by equitable estoppel against the plaintiff.

The court below found that Clifford and his wife acquired title to the half claimed by plaintiff by equitable estoppel. The evidence, which was in sharp conflict on all material points, abundantly supports the finding.

Plaintiff and his brother Frank executed and delivered a mortgage on the farm to their mother, Albina D. Thom, on June 20, 1927, for the sum of $7,000 at five per cent interest due in five years in renewal of the prior mortgage which she then held. In 1928 Clifford leased the farm from plaintiff and Frank and lived thereon as their tenant during the years from 1928 to 1932, inclusive.

When the Albina D. Thom mortgage came due in 1932, neither plaintiff nor his brother Frank had paid or arranged to pay or renew it. Albina's son Claude went to Rushmore as her agent just prior to September 1, 1932, to collect or make a settlement. First he saw plaintiff on his farm, which adjoins the land in question. Plaintiff told him that he could not do a thing about the mortgage and that he had "all he could handle at home." Then Claude saw Frank, who said that he was going to throw up the farm and let it go.

When Frank said that he was going to throw up the land, Claude told him that was all right, since he had a party who would take the land for the mortgage. Then Claude suggested to Frank that Clifford take the farm over and that if he did so he, Claude, would consent to renew the mortgage for five years with interest reduced from five to four per cent.

When Clifford learned of the proposition that he take over the farm, he and his father went to see plaintiff concerning the matter. Plaintiff told them in effect that he had to give up the land, that he could not hold it, and that he doubted whether he could hold the farm on which he was then living. Clifford then told him that he would take the farm and requested plaintiff to go to Rushmore to confer with Claude about such a deal. Then plaintiff told Clifford that he would not go to Rushmore to make any deal, that he was "out of the deal," and that Clifford could make any deal he wanted for the premises. He said that he no longer had any interest in the premises, that he

would not sign an extension of the mortgage, and that if Clifford could make a deal with Claude it was "all right" with him.

The next day, September 1, 1932, relying on plaintiff's statements, Clifford met with Frank and Claude at the bank in Rushmore. The parties made a deal whereby the farm was to be turned over to Clifford, and the mortgagee entered into an agreement signed by Frank V. Thom and his wife extending the mortgage for five years at four per cent interest. It was understood that Clifford was to pay the mortgage and that the extension agreement was taken as security. On March 21, 1933, Frank V. Thom and his wife gave Clifford and his wife the warranty deed which has been mentioned, pursuant to the understanding of the parties.

Within a few weeks after the arrangement was made for the mortgage extension agreement and for Clifford to take over the farm, Clifford told plaintiff about the arrangement. Plaintiff not only approved it, but expressed the hope that Clifford would be able to carry out the arrangement. For himself, he said that he was glad that he was through with the farm. Many times thereafter Clifford and his wife talked with plaintiff and his wife when they visited with each other and similar conversations took place. Immediately after Clifford and Frank had recorded the deeds on May 31, 1933, Clifford told plaintiff about the deeds and the recording of them, and plaintiff again approved Clifford's taking over the property and expressed the hope that he would succeed in so doing.

Following the arrangement under which Clifford took over the farm, the relations of the parties changed with respect to the farm, although they remained otherwise the same. Clifford continued to occupy the farm with his family, but as an owner and not as a tenant. He continued to farm the land, but quit paying rent and appropriated all that he produced to his own use. In 1933 as the owner

he and plaintiff entered into a line fence agreement relating to the fence between their farms. Between 1933 and 1937 he paid $503.82 taxes on the property, interest on the mortgage amounting to $1,400, and $1,000 on the principal. He made permanent improvements costing $1,000 and repairs costing $250.

Plaintiff, on the other hand, by his conduct as well as by his words approved and acquiesced in Clifford's assertions of ownership. He claimed no title after 1932, nor any right to rent or the crops. He did not concern himself about taxes, interest, or payments on the mortgage, upkeep, and improvement of the premises, or any of the things in which an owner of property would be interested.

There was evidence that in 1932 the farm was not worth more than the mortgage against it. Plaintiff, however, testified that it was worth almost twice that amount. At that time taxes and interest on the mortgage were delinquent, and for at least two years after Clifford took over the farm the income therefrom was not sufficient to pay the taxes and interest. That was at the very depth of the economic depression which had set in prior to 1932.

When the mortgage as extended came due in 1937 Clifford attempted to obtain a new mortgage from a loan company to pay off the Albina D. Thom mortgage. This company required a quitclaim deed from plaintiff for the reason that, although he had no record title, it appeared that he signed the mortgage as one of the mortgagors. Clifford requested plaintiff to give him a quitclaim deed. This he refused. Instead he commenced this action.

■ Of course Clifford J. Thom and his wife could not acquire title by plaintiff's mere statement that Clifford could have the land under a deal with Frank and Claude. They could not have conveyed plaintiff's title to Clifford. No such claim is made here. The claim of estoppel rests upon plaintiff's disclaimer of all title and interest in the farm and his consent that Clifford might take over the farm under

any arrangement which he could make by which Clifford and his wife were influenced to deal with the property in the belief that they were the owners thereof so far as plaintiff was concerned, to continue in actual possession of the farm, to acquire Frank V. Thom's title, and to expend large sums of money for the payment of taxes, principal, and interest on the mortgage, repairs, improvements, and upkeep of the premises so that under the circumstances it would be unjust now to permit plaintiff to assert title.

One who by his renunciation or disclaimer of title to property has induced another to believe and act thereon to his prejudice is estopped to assert such title. Barchent v. Selleck, 89 Minn. 513, 95 N. W. 455. In the cited case the purchaser under contract for deed, who was in possession of a farm, was held estopped to claim title where he disclaimed title and surrendered possession to the purchaser from his vendor.

The leading case is perhaps Dickerson v. Colgrove, 100 U. S. 578, 25 L. ed. 618, in which a tenant in common and his grantee were held estopped by a letter written by the former to his cotenant disavowing all intention to claim the land which the latter conveyed to defendants, who relied upon such disclaimer in purchasing and then entered into possession and made valuable improvements. The court said (100 U. S. 580, 25 L. ed. 618):

"The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais*. The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice."

In Ellis v. Johnson, 143 S. C. 325, 141 S. E. 564, it was held that one who had renounced her interest in land and surrendered possession thereof to another thereby inducing such party to pay a mortgage upon the land and improve the same in the belief that the land belonged to her, was thereafter estopped to claim title to the land. Numerous cases in which parties have been held estopped by disclaimer and renunciation where another has been induced thereby to act to his prejudice are cited in the notes to 21 C. J. p. 1148, § 153.

2. Plaintiff also claims that no consideration was paid for the land. An estoppel does not require a consideration. The basis of equitable estoppel is conduct, not contract. A promise relating to the intended abandonment of an existing right which influences the promisee to act to his prejudice may be the basis of an estoppel, where substantial injustice will result unless the promise is enforced, although there is no consideration for the promise. Butler Bros. Co. v. Levin, 166 Minn. 158, 207 N. W. 315; Fried v. Fisher, 328 Pa. 497, 196 A. 39, 115 A. L. R. 147, and annotation; 19 Am. Jur., Estoppel, § 53.

To disallow the estoppel here would be unjust. If plaintiff had done nothing at all with respect to the mortgage, which his words and conduct showed was his intention, he would have lost the land anyway. Instead of letting the land go by foreclosure, he consented to the taking over by Clifford, who, relying on his words and conduct which continued throughout the period from 1932 to the commencement of this action, acted thereon and changed his position to his prejudice. Under the circumstances, plaintiff is estopped to assert title.

Affirmed.