EDNA HORTON PERKINS, appellant, v. CITY NATIONAL BANK OF CLINTON, appellee; THE BRITISH HOME, a corporation, intervenor-appellee.

No. 50545.

MARCH 6, 1962.
REHEARING DENIED MAY 8, 1962.

Bechly, McNeil & Bonham, of Montezuma, and L. L. Jurgemeyer, of Clinton, for appellant.

Halbach & Halbach, of Clinton, for intervenor-appellee.

SNELL, J.—This is a law action. Plaintiff seeks judgment against defendant bank for failure to honor a check drawn on a joint account in the name of plaintiff and one Reverend Thomas Horton, now deceased. Because of a controversy over ownership of the account, the bank asked that it be permitted to pay the funds into court and be relieved of liability. The intervenor claims the funds under an assignment and contract made before the creation of the joint feature of the account. The real controversy is between plaintiff and intervenor.

Edna Horton Perkins, plaintiff herein, is a resident of Hardin County, Iowa. The City National Bank of Clinton, Iowa, defendant herein, is a banking association organized under the laws of the United States with its principal place of business in Clinton, Iowa.

The British Home, intervenor herein, is an Illinois eleemosynary corporation. Intervenor maintains a home for aged people of British extraction.

Reverend Thomas Horton, hereinafter called decedent, had been, prior to retirement, Rector of St. John's Episcopal Church of Clinton, Iowa. Plaintiff is a niece of decedent.

Long prior to July 15, 1947, and continuously thereafter, decedent had a checking account in defendant bank. Until his death, decedent made deposits therein and withdrawals therefrom.

On July 15, 1947, decedent entered and became a resident of the home maintained by intervenor. Except for absences for visits elsewhere, decedent remained a resident of the home until his death.

Coincident with decedent's admission to the home, he executed three instruments identified in the record as defendant's and intervenor's Exhibits A, B and C. They are as follows:

Exhibit A

"Applicant's Agreement on Admission Into British Old People's Home in Illinois.

"I, Thomas Horton, in signing this agreement, do hereby declare and agree that my admission into British Old People's Home is not by reason of any right or in consideration of any payment made by me or any one for me, but is because its proper authorities, so far as they now know me and are acquainted with my disposition, habits and character, think me worthy of its care and that if I shall be accepted as a resident of the Home I acquire no rights not subject to the discretion and judgment of the Board of Trustees of said Home.

"I agree that I am at all times to be subject to and will obey all the rules and regulations that now govern or may hereafter be made by the Board of Trustees for the government and management of the Home; that I will at all times cheerfully render such aid and assistance in the necessary work of the Home, as the matron or her authorized assistant shall require of me.

"I agree that my remaining in the Home is to be at all times a matter within the control of its Board of Trustees, and if at any time they shall for any reason think my continuance in the Home undesirable, they shall have the right to expel me from it; and in such event I agree that I will quietly and peaceable leave the Home failing which they shall remove me, using such means as may be necessary for that purpose.

"I understand and agree that I am at first received into said Home on probation for a period of six months, after which period the Board will accept and confirm me as a resident of the Home, if the Board so elects, but this shall in no way change the right of the Board to rescind such action and terminate my right to remain in the Home whenever in their opinion it shall be for the best interests of the Home.

"I further understand that the payment of my cash contribution, if any, and an assignment to the Home of all property which I now or may hereafter own and my will leaving all my property to the Home must accompany this agreement.

"Dated July 15, 1947

"Witnesses:                    /s/ Thomas Horton
/s/ Mrs. P. L. Richtinger
/s/ Mrs. Thos. W. Blackwell

"Approved:
/s/ Ellen J. Grundy
Chairman of the Admissions Committee

"Accepted July 15, 1947
The British Old People's Home in Illinois,
By /s/Julie Cooke Adams   President."

EXHIBIT B

"Assignment

"In consideration of my admission to British Old People's Home in Illinois, I, Thomas Horton do hereby assign, set over, transfer and convey unto The British Old People's Home in Illinois, a corporation, all my property, both real and personal of every kind and description, wherever situated, which I now own or to which I may hereafter become entitled, including any annuity, pension, old age assistance, income, right or benefit, and I further agree and covenant to promptly furnish the said Home with full information in relation to any such property or rights, and also to execute and deliver to the said Home any further transfers, conveyances or assurances which may be required to carry out this agreement and the provisions thereof. It is further understood that the Home shall be made the beneficiary of any insurance policy on my life whereupon the Home shall assume and pay the premiums on each policy assigned to it.

"The following property and insurance policies are now owned by me and are included in this assignment:

"$7500 Cash

"In the event of my permanent removal or withdrawal from the Home for any reason, any money given at my admission shall be refunded, all property conveyed by me shall be returned and all rights and interests assigned shall be reassigned, less a

deduction, however, of Fifteen ($15.00) Dollars per week, for the privileges of the Home during the time of my residence therein, the amount paid on my insurance policies, if any, and such sum of medical and nurse's care and other expenses if any, as the Board of Trustees in its discretion may determine is reasonable, and this assignment shall thereupon become void and of no further force or effect.

"Dated July 15th, 1947.

"Witnesses:                          /s/ Thomas Horton    (Seal)
/s/ Mrs. P. L. Richtinger
/s/ Mrs. Thos. W. Blackwell

"Approved:
/s/ Ellen J. Grundy
Chairman of the Admissions Committee

"Accepted July 15  1947
The British Old People's Home in Illinois,
By /s/ Julie Cooke Adams  President"

## Exhibit C

### "Will

"I, Thomas Horton, of Clinton, in the County of ⎯⎯⎯⎯⎯ and State of Iowa, do make, publish and declare this to be my last will and testament, hereby revoking all former wills by me at any time made.

"In consideration of my admission into The British Old People's Home in Illinois I hereby give, devise and bequeath to the British Old People's Home in Illinois, a corporation, all my property, both real and personal of every kind and description, wheresoever situated, which I may own or be entitled to at the time of my death, to have and to hold the same forever for the uses and purposes of said Home.

"And I hereby nominate and appoint to be the executor or executrix of this my last will and testament, the person who is at the time of my death the duly constituted and appointed Treasurer of said corporation, or, in the event of his or her absence or inability to act, the person who is then the duly

constituted and appointed Secretary of said corporation, and I desire that no bond shall be required of either of them.

"In case of my permanent withdrawal or removal from said Home for any reason, this will is thereupon to be considered revoked and of no further force or effect.

"In Witness Whereof, I the said Thomas Horton have to this my last will and testament subscribed my name this 15th day of July, 1947.

/s/ Thomas Horton

"Subscribed, published and declared by the said _____ as and for his (her) last will and testament in the presence of us who at his (her) request and in his (her) presence and in the presence of each other have subscribed our names as witnesses thereto.

/s/ Elsa J. Fucik residing at 31st Str. and Arden Ave.
/s/ Eva S. Grumbine residing at 4445 N. Greenview, Chicago.

"Approved:
/s/ Ellen J. Grundy
Chairman of the Admissions Committee

"Accepted July 15, 1947
The British Old People's Home in Illinois,
By /s/ Julie Cooke Adams President"

Decedent paid intervenor the $7500 cash referred to in defendant's and intervenor's Exhibit B. Decedent took with him to the home his automobile and some personal belongings. Without protest from intervenor, decedent gave away most of these possessions. When decedent entered the home he had on deposit in defendant bank $4469.07 and was receiving from the Church Pension Fund $83.34 per month. After December 31, 1950, the monthly pension was $125. From the date of decedent's admission to the home to the date of his death, decedent received pension checks totaling $14,712.56. The pension checks were deposited in decedent's account in defendant bank. Intervenor knew of this and made no objection and took no action to claim the money during decedent's lifetime.

Decedent made numerous withdrawals from his account. No deposits or withdrawals were ever made except by decedent.

On April 27, 1950, decedent had on deposit in defendant bank $5102.06. On that date decedent and plaintiff executed and delivered to defendant bank an instrument reading as follows:

"Clinton, Iowa
April 27th, 1950

"We, the undersigned, Reverend Thomas Horton and Miss Edna Horton Perkins now have on deposit in the City National Bank of Clinton, located at Clinton, Iowa, a sum of money as shown and represented by Account Checking and other sums will probably be added to said account in the future, and it is now hereby agreed between us, the undersigned and also between us, the undersigned jointly on the one part and the said Bank on the other part that either one of the undersigned may draw money from said account at any and all times during our joint lives upon his or her own individual check, and it is further agreed that we, the undersigned, are and shall be joint owners of the said fund, and that we own and shall own the same not after the manner of tenants in common, but after the manner of joint tenants, and that upon the death of either of the undersigned the said fund shall, immediately from and after said event, belong wholly to the survivor, and such survivor shall then have the right to draw the entire fund from the said Bank.

"This instrument in writing and print is this day executed and delivered to the said City National Bank Of Clinton for its future guidance in the matter of the said account, and in the matter of its control and disposition of the money at any and all times on deposit in said Bank as shown by said account.

/s/ Thomas Horton
/s/ Edna Horton Perkins"

Edna Horton Perkins, plaintiff herein, never deposited any money in the account either before or after the date of this instrument.

Intervenor knew decedent had an account in defendant bank but did not know it was a joint account.

Among checks drawn by decedent on defendant bank were checks to plaintiff as follows:

October 10, 1955—$4000
October 14, 1955—$1000
August 31, 1957—$1000

There is no claim that these amounts were anything other than a gift from decedent to plaintiff.

While living in the intervenor's home, decedent acted as chaplain. Except for such services, he did nothing and paid nothing to the home except his initial payment of $7500. A check issued after decedent's death for $84.68 for the period from March 1, 1958, through March 21, 1958, the month during which decedent died, was collected by intervenor.

Decedent died March 20, 1958.

Plaintiff caused the body of decedent to be buried and from her own funds paid the funeral bill in the sum of $1015.98. Decedent's surviving next of kin in the United States was a sister financially able to pay the cost of decedent's burial.

Until after decedent's death, defendant bank did not know of the assignment by decedent to intervenor. On March 25, 1958, plaintiff advised defendant that intervenor was making some claim to his properties. On April 1, 1958, defendant was advised of intervenor's assignment and claim.

There was on deposit in the checking account at that time $2691.88. On April 4, 1958, plaintiff drew a check on the account for her own benefit for the amount on deposit.

Defendant bank refused to honor the check until the dispute over the account was determined. Prior to plaintiff's advice to defendant bank on March 25, 1958, of intervenor's claim, defendant bank would have honored plaintiff's check.

The evidence in the case was by stipulation and exhibits.

The trial court, without the aid of a jury, found for the intervenor.

I. This is a law action. The facts, shown by the exhibits and stipulation, are not in dispute. If the trial court correctly interpreted the law as applied to the facts, the case must be affirmed. Plaintiff vigorously attacks a statement of the trial court that "an honest statement at the hand of the Court is that the *equities* of this case rest with the intervenor." (Emphasis

supplied.) In argument plaintiff says, "The Intervenor in its pleadings and arguments dwells at great length upon the equities involved. This is wholly immaterial to the determination of this case * * *." If plaintiff means that our jurisdiction is that of an appeal in a law action, we agree. We do not agree with the unintentional inference that in a law action the courts are blind to what is right. The rules of law are designed for the purpose of administering justice. The rules are a means to an end and not an end in themselves. By this we do not mean that rules should be disregarded. That would cause chaos. What we do mean is that the rules of law and justice go hand in hand.

In the instant case plaintiff presents a naked legal claim based on the document creating a joint account. The ultimate question is whether or not decedent could, by gift, create in plaintiff a claim superior to a prior existing claim.

■ Issues frequently appearing in joint tenancy cases do not appear here. Plaintiff does not claim to be an innocent purchaser for value without notice. This is not a case where an estate, heirs or legatees are claiming against a surviving joint tenant. It is not whether the will or the joint tenancy should prevail. An attempted disposition by will does not defeat or sever a joint tenancy. Hyland v. Standiford, 253 Iowa 294, 111 N.W.2d 260, and cases cited.

II. Plaintiff claims the court erred in admitting parol and extrinsic evidence to change or alter the terms of a joint bank account agreement.

■ Williams v. Williams, 251 Iowa 260, 100 N.W.2d 185, cites the authorities and states the rule that when a definite written agreement is made by a depository bank with its customers, such agreement is binding upon the bank and the parties signatory; and if it is clear in its terms and meaning, it cannot be changed by parol evidence except for a plea of fraud, duress and mistake. See also Burns v. Nemo, 252 Iowa 306, 105 N.W.2d 217.

■ The cases cited by plaintiff are sound but not controlling in the instant case. In its pleadings intervenor tendered the issue of fraud in the creation of the joint account. The evidence was by written stipulation and written documents. There is no dispute as to the evidence. The evidence as to the assignment to

intervenor prior to the joint account agreement went to the question of fraud; the evidence was in writing and not oral; and certainly written documents showing that decedent had no right to give his property to plaintiff are not extrinsic.

■ The trial court held that there was constructive fraud in the creation of the joint account in that decedent attempted to create an interest in an account he did not own. The evidence and reasonable inferences drawn therefrom are sufficient to support this conclusion.

III. Plaintiff claims defendant bank had an absolute duty to honor plaintiff's check and could not refuse payment because "Drawn against funds of a decedent—ownership of which is yet undetermined." Plaintiff's claim overlooks the fact that on March 25, 1958, 10 days before writing the check, plaintiff herself advised the bank that intervenor was making some claim to decedent's properties. Also on April 1st, four days before the check, defendant was advised of intervenor's claim and assignment. The only person who had ever made a deposit in or written a check on the account was dead. The bank knew of adverse claims.

Section 528.64, Code, 1958, provides: "When a deposit shall hereafter be made in any bank or trust company in the names of two persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or interest or dividend thereon, may be paid to either of said persons whether the other be living or not, and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank, banker, or trust company for any payment so made."

■ This is a statute for the protection of a depository bank. It does not establish the ownership of funds on deposit. Sinift v. Sinift, 229 Iowa 56, 293 N.W. 841.

In Ford v. Ames National Bank, 196 Iowa 958, 961, 195 N.W. 742, the bank improperly paid out money on deposit in the account of another. Had the defendant bank in the instant case paid the money to intervenor the situation would have been comparable. In the cited case it was held a bank acts at its peril in assuming that a deposit in the name of a particular person belongs to some other person. In rationalizing (dictum)

the court said: "The bank, upon notice of an adverse claim, could doubtless, if satisfied that the claim was made in good faith, retain a sum sufficient to meet the claim; still it must exercise diligence in notifying its customer thereof, and of its intention to protect itself. Failure or negligence in that regard, if injury results to the depositor, will render the bank liable, if the claim is unfounded. * * *."

9 C. J. S., Banks and Banking, section 342, cites Ford v. Ames National Bank, supra, and says: "Where the bank has notice that the money deposited belongs to a person other than the depositor, it may refuse to pay a check of the depositor; or, if it has notice of an adverse claim against part of the deposit, it may retain a sum sufficient to meet it, if satisfied of the good faith thereof."

There is ample authority that a bank may be liable for the improper dishonor of a check. Such cases arise where there is an actual showing or presumption of damage. In the instant case there is neither. Before she drew the check, plaintiff advised defendant of intervenor's claim. Defendant advised delay. Defendant had further notice from intervenor. The trial court found that defendant bank was aware of the conflicting rights before the check was presented and acted properly in deferring payment until the respective rights of conflicting interests were determined. This finding is supported by the record and we may not interfere.

In re Estate of Lenders, 247 Iowa 1205, 78 N.W.2d 536, cited by plaintiff, holds that an interest in a joint account vests when the joint nature of the account is created. Gifts made thereby are not testamentary in character. The case does not hold that a gift so attempted is valid against a previous assignment.

IV. Plaintiff argues that the court erred in finding a constructive fraud was perpetrated by decedent against intervenor in creating a joint account. By written instrument decedent, in 1947, assigned all of his "property, including any annuity, pension * * * income", to intervenor. This assignment was part of the consideration for which decedent received support in intervenor's home for 11 years. In 1950, in disregard of his previous assignment, decedent executed the joint bank

account agreement. Decedent attempted to make a gift of property he had previously assigned for a valuable consideration. By failure to transfer the account to intervenor, decedent retained possession, but he did not own it. Such a gratuitous assignment of property decedent did not own is sufficient to support the trial court's finding of constructive fraud.

V. Plaintiff argues that the court erred in finding that the assignment to intervenor was completed and that intervenor is the owner of the account. The assignment to intervenor was by written instrument for a valuable consideration. It was an enforceable document. There are no intervening creditors nor innocent claimants for value. Intervenor is not attempting to recover the $6000 decedent gave plaintiff. Until after the death of decedent, plaintiff did nothing to enforce her claim to the account. The assignment to intervenor was first in point of time. Plaintiff's position is not such as to vitiate that priority.

6 C. J. S., Assignments, section 91d, says:

"A subsequent assignee ordinarily cannot obtain priority over an assignee who was first in point of time, unless the subsequent assignment was for a valuable consideration and was taken in good faith without notice of the prior assignment.

"Generally, none of the rules * * * permits an assignee who is subsequent in point of time to obtain priority over an earlier assignee, unless the subsequent assignment is a bona fide one for value, taken without notice of the prior assignment, * * *. * * * where the subsequent assignee merely stands in the shoes of the assignor, taking subject to his equities, as in the case of a statutory assignee in bankruptcy or insolvency, a prior assignment is effective, without notice, against the claim of such subsequent assignee."

See also Ottumwa Boiler Works v. M. J. O'Meara & Son, 206 Iowa 577, 218 N.W. 920.

The record is sufficient to support the finding of the trial court.

VI. Plaintiff urges that intervenor's claim is barred by the Statute of Limitations, section 614.1, subsection 6, Code of 1958, by waiver, laches and estoppel. The trial court held otherwise. We agree.

Code section 614.1 provides that actions founded on written contracts may be brought within 10 years and not afterward.

When decedent entered intervenor's home he had on deposit $4469.07. He received, while living there, $14,712.56, for a total of $19,181.63. Of this total he spent or gave away, including gifts to plaintiff, $16,489.75. Assuming, but not deciding, that a claim against the amounts so disposed of might be barred by the statute, laches or estoppel, it does not follow that a claim to the $2691.88 remaining in the account is barred. Decedent's pension checks in the two years before he died totaled more than was in his account when he died. Intervenor's claim was a continuing one. To the extent that it could have been enforced against amounts received during the 10 years prior to decedent's death, it is not barred by the statute.

Plaintiff brought this action at law and insists that equity rules do not apply. The doctrine of laches is equitable in character and may not be invoked in a law action. 19 Am. Jur., Equity, section 490. Only where the elements of an estoppel are present may laches constitute a bar to a law action. Doyle v. Burns, 123 Iowa 488, 510, 99 N.W. 195. Cases cited by plaintiff where laches were considered were quo warranto actions where the elements of estoppel were present.

The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such right. 56 Am. Jur., Waiver, section 12.

"A waiver is the voluntary relinquishment of a known right, and, before it will be enforced, it must clearly appear that the party against whom it is demanded was in possession of all material facts affecting the same." Norton v. Catholic Order of Foresters, 138 Iowa 464, 469, 114 N.W. 893, 895, 24 L. R. A., N. S., 1030. 56 Am. Jur., Waiver, section 14.

The stipulated facts in the instant case establish that intervenor had no knowledge of the joint character of the bank account. There was no waiver in favor of plaintiff.

Plaintiff claims an estoppel in pais against intervenor. There is no claim of estoppel by deed.

Two basic elements for estoppel in pais are false representation or concealment of material facts, made to one without knowledge of the real facts, with the intention that it

be acted upon; and reliance thereon by the party to whom made, to his prejudice and injury. Each element must be proven clearly, convincingly and satisfactorily. Goodwin Tile and Brick Co. v. DeVries, 234 Iowa 566, 13 N.W.2d 310, 155 A. L. R. 346.

There is no estoppel here.

VII. Procedurally the situation in the trial court and here is somewhat unusual. Plaintiff's action against defendant bank was at law. The issues between plaintiff and intervenor would ordinarily have been tried in equity. There was no separate submission nor adjudication. Much of the authority is found in cases triable in equity but is appropriate to the instant case.

The trial court's findings of fact are sufficiently supported by the record. The law was correctly applied. We find no reversible error.

The case is—Affirmed.

GARFIELD, C. J., and OLIVER, THOMPSON, PETERSON and THORNTON, JJ., concur.

BLISS, J., not sitting.