Harlan Q. **HOLSTEEN**, Fred E. Holsteen, Plaintiffs-Appellees,

v.

Josephine P. **THOMPSON** et al., Defendants,

Kathryn Holsteen King Leake, Defendant-Appellant.

No. 53552.

Supreme Court of Iowa.

July 24, 1969.

Life, Davis & Life, Oskaloosa, for appellant.

F. M. Holsteen, Burlington, for appellees.

MOORE, Justice.

This is an equity action in two divisions brought by Harlan Q. and Fred E. Holsteen, brothers, against their five sisters and certain additional third persons known and unknown to quiet title to a described 80 acre tract of land in Wayne County which was owned by their father at the time of his death in 1950. Plaintiffs' petition admits four of their sisters have an equal interest in the land with them and is specifically directed against any claim therein by their oldest sister, Kathryn Holsteen King Leake.

The trial court found and decreed: "It is, therefore, ordered, adjudged and decreed by the Court that Defendant Kathryn Leake be and she is hereby estopped from claiming any right, title and interest in and to the 80 acres of land in question and that the title to said real estate shall be and the same is now and hereby quieted in and to Harlan Q. Holsteen, Fred E. Holsteen, Josephine P. Thompson, Florence M. Huffman, Dorothy E. Whittington, Edna M. Minor, surviving heirs of Joseph P. Holsteen and Margaret B. Holsteen, deceased, other than Defendant Kathryn Leake, and that any right, title and interest heretofore owned by Defendant Kathryn Leake in said land is now and hereby transferred to the above named heirs and Defendant Kathryn Leake is taxed with the costs of this case." Defendant Kathryn Holsteen King Leake has appealed. We affirm.

Joseph P. Holsteen and Margaret A. Holsteen, his wife, for many years resided on a farm near Burlington, Iowa and prior to his death, April 5, 1950 had acquired approximately 1100 acres of land, mostly in Iowa. The 80 acre tract involved herein was acquired in 1932.

Prior to his death, Joseph P. Holsteen executed a series of deeds, in which his wife joined, distributing various parcels of land to each of their seven children. The deeds were not delivered to the children during his lifetime but were left in a safe in the family home, apparently in the custody of his wife and two sons. It appears conclusively, it was a family understanding said deeds and abstracts were to be delivered to the proper child subsequent to the mother's death. Apparently the father attempted to deed land of approximately the same value of each of his children.

The Will of Joseph P. Holsteen gave his widow a life estate in all his property both real and personal with broad powers of disposition and provided that after the death of his wife the remainder of all his property was to be distributed among his children. The last sentence of Paragraph II of his Will stated: "I further authorize my said wife, at any time after my death, during the pendency of this life estate to my wife, to settle with any or all of my children, either in part or in whole, for their respective shares in my remainder estate if in her judgment such would be for the best interest of all concerned."

The inventory filed in his estate September 2, 1950 in Lee County listed the seven different parcels of real estate Joseph P. Holsteen had conveyed by deed prior to his death and in which he had reserved a life estate to extend for the period of his life and the life of his wife. The 80 acre tract involved in this action was not included in the list but was listed as part of the assets of his estate.

Soon after her father's death Kathryn employed Attorney Bernard G. Maxwell "to check for me on my father's estate". After some negotiation this instrument, now exhibit 2 in the record, was executed:

"Receipt

"I, Kathryn Holsteen King, formerly Kathryn Holsteen Shea, hereby acknowledge receipt of the sum of Seven Thousand ($7,000.00) Dollars in cash, and the release of all notes, being in the principal amount of Four Thousand and One Hundred and Sixty-one ($4,161.00) Dollars, owing by me to my Mother, Margaret B. Holsteen, as a full and complete settlement of any and all interest whatsoever which I may now have or hereafter acquire in the estate of my father, Joseph P. Holsteen, and any and all expectancy I now have or hereafter may acquire in the estate of my mother, Margaret B. Holsteen.

"This receipt is hereby given with the intention and understanding that I am hereby releasing and discharging all rights and interests whatsoever which I have had, now have, or may acquire in the future to the estate of either and both my father, Joseph P. Holsteen, and my mother, Margaret B. Holsteen.

"Dated this 17th day of October, A.D. 1951.

"/s/ Kathryn Holsteen King.

"State of Iowa, County of Des Moines, ss:

"I, Kathryn Holsteen King, formerly Kathryn Holsteen Shea, having been first duly sworn, upon my oath, hereby certify that I have read and fully understand the foregoing receipt by me subscribed; that I know the contents thereof and have signed the same voluntarily after having consulted with my attorney, Bernard G. Maxwell, of Canton, Illinois, for the uses and purposes therein set forth.

"/s/ Kathryn Holsteen King.

"Subscribed and sworn to before me by Kathryn Holsteen King on this 17th day of October, A.D., 1951.

"/s/ F. M. Holsteen, Notary Public."

It was filed for record in Lee County October 18, 1951. The two sons, plaintiffs here, helped their mother raise the $7000 which was paid to Kathryn. She was then unmarried and signed under the name King, a former husband.

Margaret B. Holsteen died September 21, 1962. Her Will admitted to probate in Lee County October 5, 1962 devised and bequeathed her property to her six children other than Kathryn. It included this statement: "I have omitted my daughter, Kathryn Q. Shea, now Kathryn Q. King, from any bequest or devise from my estate because I have heretofore amply provided for her during my lifetime with the understanding that she would not, thereafter, receive anything from my estate."

The probate inventory in the mother's estate, including an $8000 value for the 80 acres concerned in this action, showed gross assets of $55,318.08. After deducting a reasonable estimate for last illness, funeral and administration expenses the net remaining for equal distribution among the six children would be less than $9000 each as compared to the $11,161 received by Kathryn. And of course she had the benefit of her funds beginning in 1951. The exact amount received by each of the other six children from their mother's estate is not disclosed by the record.

The 80 acres involved in this action is contiguous to a 160 acre farm which was deeded to Kathryn by her parents under the deeds and family understanding. After her mother's death Kathryn indicated to her brothers, executors of the mother's estate, she would like to have the 80 acres but she had no money. Many months later, and under date of May 3, 1963 under authority of Powers of Attorney from their four sisters and respective husbands plaintiffs entered into a contract to sell the 80 acres to Maurice I. Goode for $8000, $2000 down with the $6000 balance to be paid upon delivery of a merchantable title and abstract.

The purchaser's attorney raised the question of whether Kathryn Holsteen King Leake had any interest in the 80 acres sold to Mr. Goode. Kathryn refused to sign any document disavowing such interest and this quiet title action was then instituted to clarify the title.

In division I of their petition plaintiffs alleged they and their four sisters had been in open, notorious, continuous, exclusive, hostile and adverse possession of the described property under color of title for more than 10 years. In division II plaintiffs alleged in detail the facts which we have set out supra and asserted an equitable estoppel against Kathryn claiming any interest in the 80 acres involved. Kathryn's answer denied the allegations of plaintiffs' petition and asserted an undivided one-seventh interest in common in the described realty. Plaintiffs' reply denied the affirmative allegations of the answer and alleged the receipt signed by Kathryn forfeited and surrendered any interest she had in her father's and mother's estates and in the land involved here.

■ I. Our review of this equity action is de novo. Rule 334, Rules of Civil Procedure. In equity cases, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court but are not bound by them. Rule 344(f), R.C.P.

■ II. The trial court's findings and conclusions include: "Defendant Leake's claim that, at the time she executed Plaintiffs' Exhibit 2, she understood she was releasing only her share in the personal property in said estates is not supported by the evidence, it being shown she had benefit of competent legal counsel at all times, including negotiation of settlement and execution of receipt and during administration of Joseph P. Holsteen's estate, and no representations were made to cause her to believe she was doing anything other than releasing all right, title and interest in Joseph P. Holsteen's estate and Margaret B. Holsteen's estate, as stated in Plaintiffs' Exhibit 2. * * *

"Plaintiffs' claim, Division II of Petition, that Defendant Leake should be estopped from now asserting any interest in the land in question, because of her execution of Plaintiffs' Exhibit 2 and the consideration she received therefor, is sup-

ported by the evidence, it being shown Defendant Leake had, at time of execution of Plaintiffs' Exhibit 2, every reason to know her rights in and to Joseph P. Holsteen's estate and Margaret B. Holsteen's estate and the other heirs had every reason to rely on said exhibit in contracting for sale of land in question." Our careful review of the record leads us to the same findings and conclusions.

■ III. Under the doctrine of equitable estoppel appellant, Kathryn Leake, is foreclosed from asserting any claim or title to the 80 acre tract here involved. The decree of the trial court must be affirmed on that basis. We need not and do not decide plaintiffs' other pleaded grounds.

The principles of equitable estoppel have been announced by us many times. It is based upon the idea that one who has made a certain representation should not thereafter be permitted to change his position to the prejudice of one who has relied on it. Olson v. Norwegian Mutual Ins. Ass'n, 258 Iowa 731, 735, 140 N.W.2d 91, 94; Laverty v. Hawkeye Security Ins. Co., 258 Iowa 717, 726, 140 N.W.2d 83, 88; Sanborn v. Maryland Casualty Co., 255 Iowa 1319, 1327, 1328, 125 N.W.2d 758, 762, 763, and citations.

In Goodwin Tile & Brick Co. v. DeVries, 234 Iowa 566, 568, 569, 13 N.W.2d 310, 312, 155 A.L.R. 346, 349, we quote this from Smith v. Coutant, 232 Iowa 887, 891, 6 N.W. 2d 421, 424: "In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed, and who reasonably relied thereon. Such a doctrine is neither odious, nor in disfavor, in either law or equity."

For like statements see, 28 Am.Jur.2d, Estoppel and Waiver, section 3, page 601; 31 C.J.S. Estoppel § 1 a, p. 290.

■ One who by his renunciation or disclaimer of title to property has induced another to believe and act thereon to his prejudice is estopped to assert such title. Lucas v. Hart, 5 Iowa 415, 419; McDowell v. McDowell, 141 Iowa 286, 290, 119 N.W. 702, 703, 31 L.R.A.,N.S., 176 (title quieted in plaintiff based on estoppel against defendant); Koep v. Koep, 146 Iowa 179, 182, 123 N.W. 174, 175; Thom v. Thom, 208 Minn. 461, 294 N.W. 461, 464 (facts similar to case at bar).

In 28 Am.Jur.2d, Estoppel and Waiver, section 81, page 723, the editor states: "Although the courts are inclined to be somewhat more reluctant to give effect to estoppels when they affect the title to real estate than in other instances, the rule is generally well settled in the modern law that the title to land or real property may pass by an equitable estoppel, which is effectual to take the title to land from one person and vest it in another where justice requires that such action be done." And in section 82, page 726, states: "An owner may be estopped to assert his title to realty where by his renunciation or disclaimer of title he has induced another to believe and act thereon to his detriment."

31 C.J.S. Estoppel § 59 a, page 373, states: "As affecting land titles, equitable estoppel is a doctrine by which a party is prevented from setting up his legal title because he has through his acts, words, or silence led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience."

■ The burden of proof here rests on plaintiffs to prove the alleged estoppel. Rule 344(f) 5, R.C.P. Dart v. Thompson, Iowa, 154 N.W.2d 82, 86, and citations. Estoppel to be sustained must be clearly proved in all its essential elements, by clear, convincing and satisfactory evidence. Perkins v. City National Bank of Clinton, 253 Iowa 922, 936, 114 N.W.2d 45, 53; Goodwin Tile & Brick Co. v. DeVries, 234 Iowa 566, 568, 13 N.W.2d 310, 312,

155 A.L.R. 346, 349; Rivers v. Metropolitan Life Ins. Co. of New York, 232 Iowa 687, 690, 6 N.W.2d 3, 5; Stookesberry v. Burgher, 220 Iowa 916, 922, 262 N.W. 820, 823.

Plaintiffs met their burden of proof. The record is clear that appellant by her execution of the receipt, exhibit 2, has already received more from her father's estate than can possibly be received by each of the plaintiffs and her four sisters. They relied on her declared position and obligated themselves to convey to the purchaser of the 80 acre tract a merchantable title. To disallow the estoppel here would be unjust.

We agree with the decree entered by the trial court. Affirmed.

All Justices concur.