Betty Irene JOHNSON, Appellant,

v.

Robert Acy JOHNSON, James Tuttle and
Linda Tuttle, Appellees.

No. 63952.

Supreme Court of Iowa.

Feb. 18, 1981.

M. J. Ouderkirk, Indianola, for appellant.

L. P. VanWerden, of Reynoldson, Van-Werden, Kimes, Reynoldson & Lloyd, Osceola, for appellee Robert Acy Johnson.

Charles L. Roberts, Des Moines, for appellees James and Linda Tuttle.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK and ALLBEE, JJ.

ALLBEE, Justice.

Plaintiff Betty Irene Johnson appeals from an adverse decree in her action for partition of real estate. Specifically, she alleges trial court was not justified in finding her interest in the disputed property subject to a real estate contract executed between her former husband, defendant Robert Acy Johnson, and defendants James and Linda Tuttle.

The facts from which this case arises are briefly as follows. Betty and Robert Johnson were married on December 24, 1974; in February of 1975 they purchased the house and real estate which are the subject of this dispute. They acquired the property as joint tenants under a real estate contract. Sometime in January of 1976, during a period of marital difficulties, both parties

moved from the house. On approximately February 9, Robert sold the property on contract to defendants James and Linda Tuttle. Prior to the execution of this latter contract, he had informed the Tuttles that his wife had abandoned any interest in the real estate. This second real estate contract, which identified the seller as "Robert A. Johnson, a single person," was never signed by Betty. At this same time, Betty commenced a dissolution action; a decree dissolving the parties' marriage was entered on November 24, 1976. That decree purported to award both Robert and Betty a one-half interest in the disputed real estate.

In September of 1977, Betty initiated the present action, asking that the property be partitioned and that the Tuttles' interest be declared secondary to her own. Following trial in June of 1979, the court orally announced its intent to rule in favor of defendants. In its written findings and conclusions filed in October, trial court determined that Betty, "at the time she moved out of the premises did advise her then husband, Robert Acy Johnson, that she had no interest in carrying on the contract for the property or in keeping it." Based on findings that Robert had been authorized by Betty to dispose of the property, and that she was estopped from denying the Tuttles' contract due to her knowledge of improvements and payments they made and her failure to act on that knowledge, the court concluded that the "equitable title, subject to the outstanding legal title [held by the Johnsons' vendor], should be vested in both [Betty and Robert] subject to the valid contract with [the Tuttles]". Trial court further provided that Betty join Robert in executing a deed to be held in escrow pending the completion of the second contract, and that the "excess payments" on the Johnson-Tuttle contract (the Johnsons' profit) should be shared equally between Robert and Betty.

Because this action is in equity, we find the facts de novo. As such, while we are not bound by the factual findings of the trial court, we do give them weight, "especially when considering the credibility of witnesses." Iowa R.App.P. 14(f)(7).

■ I. *Waiver of the right to appeal.* The initial issue we must confront in this case concerns Betty's alleged waiver of her right to appeal. This question arises on a motion to dismiss filed in this court by the Tuttles. *See* Iowa R.App.P. 23(a).

Immediately preceding the commencement of her partition action, Betty paid real estate taxes in the amount of $60.26 and a $71.60 insurance payment in connection with the disputed property. In orally announcing its intention to find in favor of defendants, trial court had stated that Betty should be reimbursed by the Tuttles for these expenditures; this provision was subsequently incorporated in its written decree filed on October 10, 1979. In September, prior to the filing of trial court's written decree but following the oral pronouncement, the Tuttles' attorney mailed to Betty's attorney a check in the sum of $131.86, purportedly representing the amount she was to be reimbursed. This check was in turn forwarded to Betty, who cashed it during the pendency of this appeal. On March 10, 1980, the Tuttles filed the motion to dismiss alleging that Betty, in cashing the check, had accepted the benefits of the decree and thereby waived her right to appeal. We ordered that the motion be submitted with the merits of the case.

■ The Tuttles' motion is predicated upon the general principle that a party who accepts "material and substantial benefits under a judgment or decree may not ordinarily challenge the provisions under which such benefits are awarded." *In re Marriage of Abild*, 243 N.W.2d 541, 542–43 (Iowa 1976). Implicit in this so-called appellate waiver doctrine is the requirement that the waiver be made voluntarily, intentionally and with knowledge of the circumstances. *See Vermeer v. Sneller*, 190 N.W.2d 389, 395 (Iowa 1971). Recent decisions, noting the potential for harsh results, have retreated from the strict application of the doctrine prevalent in earlier cases. *E.g., Poulsen v. Russell*, 300 N.W.2d 289, 293 (Iowa 1981); *Yeager v. Durflinger*, 280 N.W.2d 1, 4 (Iowa 1979); *Starke v. Horak*,

260 N.W.2d 406, 407 (Iowa 1977); *Millsap v. Cedar Rapids Civil Service Commission,* 249 N.W.2d 679, 683 (Iowa 1977). The burden is on the party who "claims the loss of rights by an adverse party through acquiescence to show facts supporting his contention." *Millsap,* 249 N.W.2d at 683.

■ In this case, Betty and the Tuttles disagree as to the purpose of the check and the circumstances surrounding its endorsement. The trial record is devoid of any evidence bearing on this issue. The information before us is limited to the opposing contentions of the parties contained in the motion and the resistance thereto, an affidavit accompanying each, the briefs filed in this court and the cancelled check, offered at the oral submission of this appeal. A motion to dismiss pursuant to Iowa R.App.P. 23(a) or a resistance thereto should be supported by references to attached copies of relevant portions of the trial court record, affidavits or stipulations of facts. *See* Iowa R.App.P. 22(c). In rare circumstances, when the facts relevant to a motion to dismiss cannot be shown in any other manner, application should be made to this court for the appointment of a commissioner to receive evidence and propose findings of fact upon which this court can base its findings and conclusions in relation to the motion to dismiss. *Cf. Committee on Professional Ethics v. Wilson,* 290 N.W.2d 17, 18 (Iowa 1980) (district judge appointed commissioner of this court to hold evidentiary hearing on attorney's application for reinstatement and to prepare written summary of the evidence). While defendants have provided support for their motion by means of an affidavit and the check involved, this evidence is inadequate to demonstrate that Betty voluntarily and knowingly waived her right to appeal. Thus, we decline to find the appellate waiver doctrine applicable here, and proceed to the merits of this appeal. Tuttles' motion to dismiss accordingly is overruled; this ruling renders moot Betty's two motions to strike certain of Tuttles' waiver assertions.

II. *Merits of plaintiff's appeal.* As noted at the outset, Betty contends trial court was not justified in concluding that her interest in the disputed property was subject to the real estate contract executed by her former husband and the Tuttles. The determinative questions here are whether, under the record in this case, Robert was justified in selling the real estate without Betty joining in the conveyance, and whether she may now assert an equitable interest in the realty superior to that of the Tuttles.

■ Betty initially asserts that the decree dissolving the marriage between herself and Robert, which awarded an undivided one-half interest in the disputed property to each, is res judicata with respect to the property rights and interests of these parties. We note, however, that the question of the effect of the real estate contract between Robert and the Tuttles was never raised in the dissolution proceedings, even though Betty's attorney in that proceeding was aware of the sale. Furthermore, neither Robert nor his attorney was present when the hearing on the petition for dissolution was conducted. Consequently, the decree did not constitute a final adjudication with regard to the issues raised in this action. Similarly, Betty's contention that the property division contained in the dissolution decree may not be modified by a subsequent proceeding is misplaced here. We are not presented in this case with the attempted, subsequent modification of the property division, *see, e.g., In re Marriage of Johnson,* 299 N.W.2d 466 (Iowa 1980); the propriety of that award is not what is in issue. Rather, the inquiry here is whether, due to her representations and conduct both prior and subsequent to the dissolution decree, Betty should now be estopped from asserting an interest in the disputed property superior to that of the Tuttles.

■ We have previously applied the doctrine of estoppel to interests in real property wherever necessary to prevent injustice. *See, e.g., In re Estate of McAllister,* 214 N.W.2d 142, 146 (Iowa 1974); *Alcorn v. Linke,* 257 Iowa 630, 640–42, 133 N.W.2d 89, 95–96 (1965); *Koep v. Koep,* 146 Iowa 179, 182, 123 N.W. 174, 175 (1910); *McDowell v. McDowell,* 141 Iowa 286, 288–

90, 119 N.W. 702, 702–03 (1909). Equitable estoppel is based upon "the idea that one who has made a certain representation should not thereafter be permitted to change his position to the prejudice of one who has relied upon it." *Holsteen v. Thompson*, 169 N.W.2d 554, 558 (Iowa 1969). The foundations of the doctrine are "public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed, and who reasonably relied thereon." *Id.* (quoting *Goodwin Tile & Brick Co. v. DeVries*, 234 Iowa 566, 568–69, 13 N.W.2d 310, 312 (1944)). While there is no hard-and-fast rule for determining when equitable estoppel will be applicable, and each case must be decided in light of its surrounding facts and circumstances, *Johnson v. Pattison*, 185 N.W.2d 790, 795 (Iowa 1971), this court has generally applied the doctrine, in connection with interests in real property, when a party has through his acts, words or silence led another to take a position such that the subsequent assertion of the first party's interest would be contrary to equitable principles. *Holsteen*, 169 N.W.2d at 558. With these general principles in mind, our independent review of the record satisfies us that defendants have adequately established the applicability of estoppel in this case.

■■■ We note initially that the traditional elements of equitable estoppel, which must be demonstrated by clear, convincing and satisfactory evidence, have been established by the facts of this case. These elements are generally delineated as (1) a false representation or concealment of material facts; (2) a lack of knowledge of the true facts on the part of the actor; (3) the intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury. *See, e. g., Farmers & Mechanics Savings Bank v. Campbell*, 258 Iowa 1238, 1247, 141 N.W.2d 917, 922 (1966). Several circumstances demonstrate representations and conduct by Betty which falsely led Robert and the Tuttles to believe she had no further interest in the disputed property. Robert testified that Betty told him in January of 1976 that she wanted nothing to do with the property and that he could do with it what he wanted. While Betty denied making these statements, additional testimony was offered indicating that others in the surrounding area had heard her make similar comments. Other factors circumstantially substantiate the conclusion that Betty wanted no part of the house at that time: she had moved her belongings from the home that January; she made no effort to assist Robert in making the January and February house payments; she declined to give Robert part of the funds taken from a joint bank account with which he wanted to pay the utilities; she made no attempt to either rent or sell the house herself; and she refused to further discuss the matter with Robert. These circumstances also indicate Betty's intent that her representations and conduct be acted upon. Similarly, the record reflects the belief of both Robert and the Tuttles that Betty no longer claimed an interest in the realty, and their reliance upon her representations and conduct. Under these circumstances, the essential elements of equitable estoppel were satisfactorily established and application of the doctrine was appropriate.

Moreover, the record in addition clearly demonstrates that Betty knew or should have known of the sale of the disputed property to the Tuttles for some time prior to the commencement of her partition action. Betty was aware that the payments due under the contract which she and Robert had executed were always made, yet she made no effort to inquire as to who or under what circumstances those payments were being made. Further, balances owed by Robert and Betty on both a sewer installation and washer-dryer for the house were taken over and paid by the Tuttles. Most importantly, Betty herself testified that she knew of the sale to the Tuttles by the end of spring in 1976; the record indicates, however, that she made no effort known to these defendants to assert her interest until the filing of this partition action in September of 1977. Under these circumstances, we

find Betty's silence and inaction with respect to her equitable interest in the realty are such that she cannot now claim that her interest is not subject to the real estate contract executed between Robert and the Tuttles.

Our foregoing conclusion notwithstanding, Betty will still receive for her interest one-half of the profit derived from the contract with the Tuttles. While we do not approve of Robert's representing himself as single when he entered the contract with the Tuttles, we are satisfied that trial court reached an equitable solution in this case, and its decree is affirmed.

AFFIRMED.