Raymond H. CRANSTON and Dorothy Cranston, Appellants,

v.

Bernard E. SAGGAU, Jr. and Lois N. Saggau, Trustees of the Saggau Family Trust, Dated July 12, 1990, Recorded in Misc. Bk. 4, Pg. 589 in the Dickinson County, Iowa, Recorder's Office, Appellees.

No. 93–1300.

Court of Appeals of Iowa.

Oct. 25, 1994.

David J. Stein, Sr., Milford, for appellants.

Patrick M. Carr of Zenor and Carr, Spencer, for appellees.

Heard by DONIELSON, C.J., HUITINK, J., and PERKINS, S.J.,* SACKETT, J., takes no part.

PERKINS, Senior Judge.

The Cranstons and the Saggaus own adjoining lots on West Lake Okoboji in West Okoboji, Iowa. The lots abut the lake to the north, and the Saggau lots are east of the Cranston lot.

Upon purchasing their lots in 1990, the Saggaus obtained a summary of zoning ordinances from the then city zoning administrator. The summary listed a twenty-five foot setback for front yards. However, it failed to mention an applicable requirement of section 3.1 of Article XI of the zoning ordinance that "no part of any new building shall project beyond a line joining the two adjacent corners of the buildings on either side...."

The Saggaus sold one lot and part of the other. They then prepared to build an expensive home on the remainder of the lot adjoining the Cranston lot. The neighbors'

* Senior judge from the fifth judicial district serving on this court by order of the Iowa Supreme Court.

relationship quickly deteriorated with disputes arising over trimming trees, heavy equipment crossing the Cranstons' land, and the need for a retaining wall.

The Saggaus designed their house so the house and an enclosed front porch would not violate the setback requirement. Ed Rice, the new zoning administrator, ruling on his first application, approved the plan, and a building permit was issued. Unfortunately, Rice had not read the zoning ordinances and had relied solely upon the zoning summary. He thus overlooked section 3.1's requirement.

The Saggaus' builder first worked on the house itself, then started building the porch. The date upon which the Cranstons first noticed a porch was being built in violation of section 3.1 is a point of contention. The Cranstons claim they first noticed Saggaus were building a porch, rather than a nonoffending patio, on August 11, 1991. They admit, however, they had expressed some concerns to the mayor between the end of July and August 4.

The Saggaus claim the Cranstons knew a porch was contemplated at least as early as July 22, 1991, when Raymond Cranston allegedly told a worker certain boards were for a porch. Cranstons claim they told the worker they had no idea what the boards were for.

The Cranstons informed the mayor of the suspected violation. The mayor, after consulting with Rice, initially denied Cranstons' claim, but then admitted a mistake may have been made. The mayor allegedly assured the Cranstons the city would remedy the matter.

On September 20, 1991, the Cranstons' lawyer sent a letter to the Saggaus and the city notifying them of the violation. The Saggaus allegedly received oral notice on that date and written notice on September 23, 1991. The Saggaus halted work on the porch but eventually finished it to avoid water damage. The city council subsequently voted to require the Saggaus to comply with the ordinance, but the Cranstons were later informed the city would not pursue the matter.

The Cranstons filed a petition in equity seeking a permanent injunction requiring Saggaus to remove the porch plus damages. The Cranstons also filed a certiorari action against the city for refusing to enforce the ordinance. The trial court refused to consolidate the cases.

The Saggaus admitted the violation but raised an equitable estoppel defense based on the Cranstons' failure to complain about the violation until substantial funds had been expended in constructing the porch.

At trial, the Cranstons tried to show they urged the city to enforce the ordinance as soon as it appeared the Saggaus were building a porch instead of a patio. They also claimed Saggaus had notice of the ordinance through their title opinions and other means. They stated it was common knowledge in the area one neighbor does not build a structure to block another neighbor's view. They also presented evidence Bernie Saggau had earlier complained at a city council meeting a proposed mobile home park would improperly block lake views near property he owned on East Lake Okoboji. The Cranstons finally presented evidence their property value had declined due to the diminished view and Saggaus' property would be worth more with a deck rather than a screened-in porch.

The trial court ruled the Saggaus established every element of equitable estoppel and rejected the requests for an injunction and damages. The court also denied the Cranstons' Iowa Rule of Civil Procedure 179(b) motion. The Cranstons appeal.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ For the reasons set forth below, we reverse the decision of the trial court. We hold the Cranstons are entitled to an injunction requiring the Saggaus to remove the portion of their porch which is in violation of

the West Okoboji zoning ordinance, Article XI, section 3.1.

The porch construction violates the ordinance by extending out toward the lake beyond the lakeside setback line. The unlawful extension blocks Cranstons' view of the main part of West Lake Okoboji to the east of their property. The zoning ordinance was enacted, in part, to protect property owners from the loss of these property rights. Because of the unique character of this property to the Cranstons, no amount of damages will adequately compensate them for their loss of view. There is no adequate remedy at law. Cranstons' loss can only be remedied in equity by enjoining Saggaus' violation of the zoning ordinance.

■ The Saggaus admit they are in violation of the ordinance. They raise the affirmative defense of equitable estoppel. The essential elements of equitable estoppel are:

> (1) a false representation or concealment of material facts; (2) a lack of knowledge of the true facts on the part of the actor; (3) the intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury.

*Johnson v. Johnson,* 301 N.W.2d 750, 754 (Iowa 1981). The party asserting the defense of equitable estoppel has the burden of establishing all of these essential elements by clear, convincing, and satisfactory evidence. *Incorporated City of Denison v. Clabaugh,* 306 N.W.2d 748, 754 (Iowa 1981) (citing *Anita Valley, Inc. v. Bingley,* 279 N.W.2d 37, 41 (Iowa 1979)).

■ The Saggaus have failed to meet the requisite burden of proof. The record clearly demonstrates the Saggaus have failed to prove there was a false representation or concealment of the material facts, and they lacked knowledge, or the means of obtaining knowledge, of the zoning ordinance.

The Saggaus cannot claim there was a false representation or concealment of the facts. A building permit was issued by mistake. Certainly, however, this is not the fault of the Cranstons. "Elements must appear in relation both to the party to be estopped and in relation to the party claiming estoppel." *Conley v. Warne,* 236 N.W.2d 682, 685 (Iowa 1975). The building permit was issued because Ed Rice, the then-new zoning administrator, made the same mistake as the Saggaus: he did not read the zoning ordinance. The Cranstons misrepresented or concealed nothing from these parties.

Furthermore, the record demonstrates Saggaus knew or should have known the construction would put them in violation of the ordinance. The Saggaus had at least constructive notice of the ordinance through their title opinions and past disputes the Saggaus were directly involved with in the neighborhood. Furthermore, there was evidence presented it was common knowledge in the area one neighbor did not build a structure to block another neighbor's view. An ordinary and prudent person would have been put on inquiry. It is not enough for Saggaus to say they did not know the ordinance requirements. The Saggaus were under a duty to learn the requirements of the ordinance by consulting the ordinance when they applied for the permit. "Ignorance of an ordinance will not excuse its violation." *Conley,* 236 N.W.2d at 686 (citing *Boardman v. Davis,* 231 Iowa 1227, 1232, 3 N.W.2d 608, 611 (1942)).

■ In most situations the doctrine of equitable estoppel is applied strictly. *O'Dell v. Hanson,* 241 Iowa 657, 664, 42 N.W.2d 86, 90 (1950). However, Iowa cases provide for application of estoppel in a special situation. A neighbor who observes in silence and without objection as an adjoining landowner expends large sums toward property improvement may become bound by his silence. *See, e.g., Conley,* 236 N.W.2d at 685; *McCartney v. Schuette,* 243 Iowa 1358, 1361–62, 54 N.W.2d 462, 463–64 (Iowa 1952). The Saggaus rely heavily on this line of cases. However, these cases are readily distinguishable from the instant case.

The line of cases cited by the Saggaus turn on two key facts. First, the plaintiffs in *Conley* and *McCartney* knew of the zoning violations but did nothing for an unreasonably long time, until the construction at issue was completed or nearly completed. *Conley,* 236 N.W.2d at 685, *McCartney,* 243 Iowa at 1361, 54 N.W.2d at 463–64. Second, in *Conley* the property owner relied on the builder to apply for a building permit, and our su-

preme court held that good faith reliance on the builder made the property owner an "innocent" party. *Conley,* 236 N.W.2d at 686. The case at bar presents a much different situation.

In the case at bar, the Cranstons did not remain silent until the project was completed. The Cranstons took action by notifying the city of the violation of the zoning ordinance as soon as they became aware of the violation. The Cranstons additionally notified the Saggaus of the violation by registered letter on September 23, 1991. Under the circumstances, this was not unreasonably long.

Furthermore, in the instant case the Saggaus themselves applied for the building permit. The Saggaus should have made certain their proposed construction was not in violation of the ordinances. No one would comply with ordinances if they could avoid compliance merely by not reading the ordinance. A contrary result here would reward ignorance.

For these reasons, we reverse the decision of the trial court. We order the removal of the porch so as to comply with the ordinance at issue. All other arguments we either deem are without merit, or are adequately dealt with in this opinion. Costs are to be taxed to the Saggaus.

**REVERSED.**