## O'Brien *v.* Sovereign Camp of the Woodmen of the World, Appellant.

40

Argued March 3, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*James G. McDonough,* with him *Clarence J. Wing,* for appellant.

*Edward J. Kelly,* with him *John P. Kelly, Clarence Balentine,* and *W. J. Fitzgerald,* of *Kelly, Balentine, Fitzgerald & Kelly,* for appellee.

OPINION BY BALDRIGE, J., April 27, 1936:

The plaintiff in this action of assumpsit is the beneficiary in a certificate of insurance issued by defendant on the life of Patrick O'Brien.

On April 28, 1927, the insured, then 50 years of age and unmarried, arose about 4 a. m., left his boarding house in a suburban section of Scranton, and never returned. About two months later, some boys found the partly decomposed body of a man on West Mountain, not far distant from where O'Brien had lived. Neither the police, coroner, nor anyone else was able to identify it and the undertaker was directed to bury the body where it was found. A sister, Nellie O'Brien, who had been living away from Scranton, returned sometime thereafter. She made an investigation and became convinced that this body was that of her brother. She thereupon notified the plaintiff, a resident of Chicago, of their brother's death.

On July 12, 1929, the plaintiff forwarded to the defendant proofs of death containing the facts then known and the beneficiary certificate. On September 12, 1929, the body was exhumed, and, after some further examination, it was buried in the O'Brien cemetery lot. On September 23, 1930, the defendant wrote a letter to plaintiff's attorney in Chicago, wherein it was stated, in part, as follows: "Replying to your communication of the 17th inst. relative to the above case we wish to advise that it has been necessary to withhold payment of the claim under the certificate held by Patrick O'Brien by reason of the fact that no satisfactory proofs of death have been submitted ...... If any definite proof can be submitted showing that the body of the man found on West Mountain was in fact the body of Patrick O'Brien, the matter will be given further con-

sideration but until positive identification can be made this association can admit no liability." In the meantime, suits were instituted in Lackawanna County by the sister under other insurance policies, and trials were had thereon. On February 25, 1933, defendant wrote, evidently in response to a letter not of record, to plaintiff's attorney: "We shall be glad to receive and examine a copy of the testimony given in the case or cases against the Prudential Life Insurance Company and will give the same careful consideration. If the claim for death benefit under this certificate is finally rejected we will return the beneficiary certificate to the designated beneficiary or his authorized representative."

Finally, on March 6, 1933, the beneficiary certificate was returned to plaintiff. This was the first unequivocal denial of liability. Suit was brought, March 28, 1933, and came on for hearing before Judge LEACH, without a jury in accordance with agreement of the parties. Judgment nisi was entered in favor of the plaintiff for the sum of $1,345. Exceptions thereto were dismissed and judgment was made absolute. This appeal followed.

The evidence of identification adduced at the trial was sufficient to warrant the trial judge's holding that the body found was that of the insured. That feature of the case is not seriously pressed in this appeal. Suit not having been instituted until March 28, 1933, the real dispute is whether an action can be maintained under the following provision in the policy: "No legal proceedings for recovery under a certificate shall be brought within ninety days after receipt of proofs of death by the Sovereign clerk, and no suit shall be brought upon a certificate, unless said suit is commenced within one year from the date of death." It must be conceded that the plaintiff has the burden of showing a valid reason why this limitation is not binding. It is obvious at once from the facts stated that the plaintiff could not have brought suit within the

one-year limitation, as it was not known within that period that the insured was dead.

While no Pennsylvania authorities exactly in point have been cited, and we have found none, the text writers and decisions in other jurisdictions support the proposition that a stipulation limiting suit to a certain time after death does not apply where the insured's death was not known either to the insurer or to the beneficiary: Joyce on Insurance, vol. 5, §5351; Couch's Ency. Insurance Law, vol. 7, §1646. In the case of Teed v. Brotherhood of American Yeomen (Wash.), 190 P. 1005, the writer of the opinion, in upholding the rule, stated that the purpose of such a provision is to limit the time when an action may be brought after a dispute has arisen.

Concluding, as we do, that the one-year limitation from death was not binding, for the reason that the beneficiary did not know within that time of the death of the insured, was it necessary for the plaintiff to bring his action within a year after his sister notified him of the brother's death? The plaintiff's position is that that question requires a negative answer, as the insurer's conduct, after receiving proofs of death, constituted a waiver of the one-year limitation from that date. This provision is for the benefit of the defendant, and may be, either impliedly or expressly, waived, or the defendant, by its conduct, can be estopped from asserting it.

Waiver is essentially a matter of intention and must be based on sound reasonable inference that the insurer did not mean to insist upon that right. "The general rule is that an insurance company will be estopped from relying on the limitation clause of its policy requiring suit to be brought thereon within a limited time, where such company has prevented the policy holder from suing within that time by holding out prospects of payment and settlement": Annot. 63 L. R. A. 204. In Hocking v. Ins. Co., 130 Pa. 170,

180, 18 A. 614, it is said: "It is undoubtedly true that any act which tends to mislead the plaintiff, while the parties are dealing on friendly terms, to avoid litigation, will be held to be evidence of a waiver of such a limitation ......"

According to the statements in defendant's letters to which we have referred, it was continuing to give careful consideration to the claim and had not finally rejected it. As was said in Coursin v. The Penna. Ins. Co., 46 Pa. 323, 331, "If the company did not intend to rely on the condition, why did it not say so, and relieve the party from further anxiety and trouble about it? If it acted and promised, after the action was legally barred, as if it did not intend to insist on the limitation, and put the party to trouble, expense, and anxiety, in regard to his claim, they need not complain of a jury finding that they did waive it. Under such circumstances, juries will be very likely to do so, and sometimes probably on pretty slight evidence." While there is apparent conflict in the decisions, depending to an extent on the particular fact or circumstances, Cooley, in his Briefs on Insurance (2d ed.), vol. 5, p. 4290, states: "The weight of authority supports the proposition that an insurance company waives or is estopped to assert a violation of the terms of an insurance contract if the company, on being notified of the violation, remains silent and fails to object or to declare a forfeiture, or cancel or rescind the contract, within a reasonable time."

We think it could be fairly assumed from the testimony that by these friendly negotiations the plaintiff was induced to believe that there was an abandonment of this limitation provision. Certainly, the defendant's conduct had a tendency to influence the plaintiff to withhold any litigation. It is said in Couch's Ency. Insurance Law, vol. 7, §1595: "As a matter of fact, there is considerable authority to the effect that if the insurer has knowledge of specific breaches of condi-

tions which would be a sufficient defense to an action on the policy, and, without denying liability or mentioning such breaches, requires the insured or claimant to furnish proofs of loss, which he does at the cost of considerable time or expense, it cannot set up such breaches in defense, since there is a waiver, or an estoppel." See, also, Barkley v. Amer. Nat. Ins. Co. (Ga.), 136 S. E. 803. "If, therefore, an insurance company, with knowledge of facts vitiating a policy, enters into negotiations or transactions with the insured, by which the company recognizes or treats the policy as still in force, or by its acts, declarations, or dealings leads the insured to regard himself as protected by the policy, or induces him to incur trouble or expense, such acts, transactions, or declarations will operate as a waiver of the forfeiture, and estop the company from relying thereon as a defense to an action on the policy": Cooley's Briefs on Insurance, vol. 5, p. 4272.

In Gould v. Ins. Co., 134 Pa. 570, 588, 19 A. 793, Mr. Justice MITCHELL, speaking for the court, said: "The result of the decisions may therefore be formulated in the following rule: If the insured, in good faith, and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy, good faith equally requires that the company shall promptly notify him of their objections, so as to give him the opportunity to obviate them; and mere silence may so mislead him to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel. But if without valid reason he fails to comply with the requirements of his policy at all, or to do so within the stipulated time, then the liability of the company is discharged; and mere silence, or investigation, or even negotiation, will not, in the words of SHARSWOOD, J., in Beatty v. Insurance Co., 'revivify the contract.' Nothing will do that short of an express agreement, or a change of position by the insured reasonably induced by the acts

of the company, and to his disadvantage. Mere disappointment in the expectation of a settlement, even though such expectation be founded on the acts of the company, as in National Ins. Co. v. Brown, 128 Pa. 386, will not be enough."

Once a limitation clause has been relinquished, it cannot be revived to apply to some other time, as a waiver once made is irrevocable unless it was procured by fraud. Suit can then be brought any time within six years. "A ground of forfeiture or avoidance of the policy, after having been waived, cannot be revived and thereafter insisted upon by the company, although it may have offered to return what it has received unless waiver was obtained by fraud upon the part of insured, and after a waiver, the company cannot insist upon the performance of the condition which it has waived": 32 C. J. 1355, §640.

In our judgment, the defendant's course of conduct estopped it from invoking the limitation clause of the contract.

Error is also assigned for failure of the court below to answer specifically findings of fact and conclusions of law. The learned court below did set forth in separate paragraphs specific findings, both of the material facts and the controlling legal conclusions, which was in compliance with the Act of April 22, 1874, P. L. 109, §2 (12 PS §689), which does not require that all the requests for findings of fact be answered by the court if it has independently found facts sufficient to sustain the judgment. See Com. v. Monon. Co., 216 Pa. 108, 64 A. 909; Athens Natl. Bank v. Ridgebury Twp., 303 Pa. 479, 154 A. 791. As the decision was filed prior to the Act of July 10, 1935, P. L. 640, its provisions are not applicable.

Judgment affirmed.