Raphael M. SCHEETZ, Selma M. Scheetz, Leo A. Lala, Jr., and Donna D. Lala, Appellants,

v.

IMT INSURANCE COMPANY (MUTUAL), Appellee.

67130.

Supreme Court of Iowa.

Sept. 29, 1982.

Rehearing Denied Oct. 21, 1982.

Kevin P. Shea and Jane Spande, Cedar Rapids, for appellants.

James F. Pickens of Pickens, Barnes & Abernathy, Cedar Rapids, for appellee.

REYNOLDSON, Chief Justice.

In this case of first impression, we determine the applicable limitation period for a fire loss claim after the insurer has waived the one-year suit limitation provision of its standard fire policy.

The record before us reflects that defendant IMT Insurance Company had insured the Cedar Rapids house involved in this controversy since 1966. It was damaged or destroyed by fire December 18, 1974. An $8000 homeowner's insurance policy issued by IMT contained the following provision:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of the loss.

Iowa Code section 515.138 requires that the above provision be contained in a fire policy.

Following this loss, these plaintiffs and their lawyer negotiated with IMT for settlement. IMT's August 21, 1975, letter to the owners offered $5000. This was rejected; the owners were demanding $8000.

December 17, 1975, one day short of the expiration of the twelve-month period, IMT's attorney wrote a letter to the owners' lawyer, raising the offer to $5500. Apparently this offer also was rejected, and by letter dated February 13, 1976, IMT withdrew it, stating "we will not be making any new offer of settlement." The owners retained new counsel. By letter dated August 31, 1976, this lawyer inquired whether IMT would pay $6000. Although there is some suggestion the claim subsequently was "still in negotiation," the owners did not bring this action until January 11, 1979.

IMT filed motion for summary judgment, urging the one-year policy limitation on suit. The owners, resisting, alleged that by the above negotiations IMT either waived the contractual provision or was estopped from asserting it. At trial and on appeal IMT concedes the provision may have been waived,[1] but nonetheless argues the one-year contractual provision would still bar the action because the period should be deemed to have commenced not later than its letter of February 13, 1976, which it asserts terminated settlement negotiations. The owners argue that when the contractual limitation was waived, the ten-year period provided by Iowa Code section 614.1(5) controlled, that being the time fixed by the legislature as reasonable for bringing suit on a written contract.

District court held there was "no evidence" of estoppel, that "[f]or purposes of this ruling, ... [d]efendant [IMT] did waive the twelve month ... [limitation]"; that the waiver extended the time for the

---

1. IMT's brief states, "Unquestionably, [the attorney's] letter of December 17, 1975, could operate as a waiver of the period of limitations which otherwise would have run the next day. Trial court so held, and understandably so."

owners to file suit only by another year; and that "under no circumstances . . . could the . . . time have extended to . . . when the Plaintiffs did file their action." We reverse and remand for trial.

I. We first explore the doctrine of waiver as developed by this court. We have defined waiver as "the voluntary or intentional relinquishment of a known right." *Travelers Indemnity Co. v. Fields,* 317 N.W.2d 176, 186 (Iowa 1982). Waiver can be shown by the affirmative acts of a party, or can be inferred from conduct that supports the conclusion waiver was intended. *Continental Casualty Co. v. G. R. Kinney Co., Iowa,* 258 Iowa 658, 660, 140 N.W.2d 129, 130 (1966). When the waiver is implied, intent is inferred from the facts and circumstances constituting the waiver. *Id.*

The issue of waiver is generally one of fact for the jury, in particular where acts and conduct are relied upon as the basis for the waiver. *Continental Casualty Co.,* 258 Iowa at 661, 140 N.W.2d at 130; *Williams v. Stroh Plumbing & Electric, Inc.,* 250 Iowa 599, 602, 94 N.W.2d 750, 753 (1959) (question of fact whether failure to respond to monthly billing statements constituted waiver of right to offset claim against account billed); *see Iowa Grain v. Farmers Grain and Feed Co.,* 293 N.W.2d 22, 25 (Iowa 1980) (fact issue whether commodity account holder's response to margin calls waived prior breach by broker); *Pond v. Anderson,* 241 Iowa 1038, 1041, 1044, 44 N.W.2d 372, 374, 376 (1950) (jury question whether disputed phone conversations constituted waiver); *cf. Travelers Indemnity Co. v. Fields,* 317 N.W.2d at 186 (fact issue where evidence raises question of voluntariness of act purported to constitute waiver).

When the evidence is undisputed, however, the issue is one of law for the court. *Continental Casualty Co.,* 258 Iowa at 661, 140 N.W.2d at 130; *Williams,* 250 Iowa at 602–03, 94 N.W.2d at 753.

Analyzing the facts of this appeal in light of these principles, it must be conceded that IMT knew the terms and provisions of its policy, including the limitation that the insured must sue "within twelve months next after the inception of the loss." Under the decisions above cited, our attention is not focused on the actions, conduct or subjective intentions of the owners, but on those of IMT. It is unnecessary, in order to constitute a waiver, that the facts be such as would support a plea of estoppel. *Briney v. Tri-State Mutual Grain Dealers Fire Insurance Co.,* 254 Iowa 673, 684, 117 N.W.2d 889, 895 (1962). The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such right. *Perkins v. City National Bank of Clinton,* 253 Iowa 922, 935, 114 N.W.2d 45, 52 (1962). It is clear to us as a matter of law, as it was to trial court, that when IMT carried the negotiations through the end of the twelve-month period it could have had no other intent than to relinquish its contractual right to limit suits to that period. There remains the issue of the duration of that waiver.

II. At the bottom of IMT's rationale is the unwarranted conclusion that an insurer's waiver of the contractual period of limitation inevitably expires in some manner. One might hypothesize estoppel situations in which that result would follow, but there is no support in our case law for an insurer to repudiate a valid waiver of a contractual provision.[2] Our decisions make it clear that suit clauses in insurance policies may be waived by the insurer. *Jerrel v. Hartford Fire Insurance Co.,* 251 Iowa 816, 824–25, 103 N.W.2d 83, 88–89 (1960); *Bish v. Hawkeye Insurance Co.,* 69 Iowa 184, 187, 28 N.W. 553, 555 (1886). A waiver of a contract right by an insurance company is an election not to take advantage of a

---

2. There is, of course, precedent in our case law for notice of termination of a course of dealing that might result in a waiver of *future* duties imposed upon a contracting party. But these cases do not approve a withdrawal of a waiver with respect to *past* obligations. *See Dunn v. General Equities of Iowa, Ltd.,* 319 N.W.2d 515, 517 (Iowa 1982); *Bettis v. Bettis,* 228 N.W.2d 193, 195–96 (Iowa 1975).

technical defense and should be looked upon with liberality. *Briney v. Tri-State Mutual Grain Dealers Fire Insurance Co.,* 254 Iowa at 684, 117 N.W.2d at 895.

A thoughtful analysis of the distinction between an estoppel and waiver in this regard is found in *Gilbert v. Globe & Rutgers Fire Insurance Co. of New York,* 91 Or. 59, 67, 178 P. 358, 358 (1919):

> [W]e may well keep in mind the somewhat elusive distinction between waiver and estoppel as illustrated in *Kimball v. Horticultural Fire Relief,* 79 Or. 133, 154 P. 578, a distinction which appears to be that a "waiver" is a voluntary relinquishment of a known right, while an "estoppel" consists of a preclusion which in law prevents a party from alleging or denying a fact in consequence of his own previous act, averment, or denial. Hence, if a party relinquishes a known right, awarded him by contract, he *cannot without the consent of his adversary, reclaim it.* But the ban of an estoppel may be lifted by the party against whom it is invoked, by the giving of proper notice.

(Emphasis added.) *See Hemmings v. Home Mutual Insurance Association of Iowa,* 199 Iowa 1311, 1319, 203 N.W. 818, 821 (1925) ("A waiver, though without consideration, cannot be retracted."); *McDonald v. Equitable Life Assurance Society of the United States,* 185 Iowa 1008, 1020, 169 N.W. 352, 356 (1918); *Mettner v. Northwestern National Life Insurance Co.,* 127 Iowa 205, 213, 103 N.W. 112, 115 (1905) ("It [insurance company] contends that while waiver might, perhaps, be found from the facts we have recited, yet, as it was without consideration, it might be retracted.... But this is manifestly unsound."); *Home Fire Insurance Co. v. Kuhlman,* 58 Neb. 488, 490, 78 N.W. 936, 936 (1899) ("The election to waive being once made, it would be irrevocable, it could not be recalled.").

■ Under the rule enunciated by these authorities, IMT's waiver could not be recalled, and of course did not expire through any other theory known to our law. It follows the general statute of limitation that applies to all other written contracts,

Iowa Code section 614.1(5), was applicable. *Whitaker v. Illinois Medical Service,* 7 Ill. App.3d 764, 767, 288 N.E.2d 631, 633 (1972); *Turner v. Bankers & Shippers Insurance Co. of New York,* 187 So. 122, 126 (La.Ct.App. 1939). The summary judgment motion should have been overruled.

III. The rule we adopt here is not followed by all jurisdictions. The split of authority has been catalogued. *See* Annot., 29 A.L.R.2d 636 (1953). Most of the decisions reaching a different result are bottomed on estoppel, not waiver. Some, like *Peloso v. Hartford Fire Insurance Co.,* 56 N.J. 514, 267 A.2d 498 (1970), involve an outright denial of liability, not a dispute over the amount of the loss. Still others turn on esoteric and theoretical concepts of "inception of the loss," a device this court rejected in *Olson Enterprises, Inc. v. Citizens Insurance Co. of New Jersey,* 255 Iowa 141, 147, 121 N.W.2d 510, 513 (1963) ("inception of loss" is date of fire or casualty insured against).

Of the decisions reaching a different result, some impose a "reasonable time" rule, others, like *Peloso,* toll the one-year limitation "from the time an insured gives notice until liability is formally declined." *Peloso,* 56 N.J. at 521, 267 A.2d at 501. One problem with both rules is that they inject an unacceptable degree of unpredictability into determination of the limitation period applicable to such cases.

■ Under the "reasonable time" rule each case generates its own fact issue for ad hoc resolution. The *Peloso* rule spawns similar problems. The facts of the instant case are illustrative. Under *Peloso* the contractual period of limitation would have recommenced running when the insurer formally declined liability. *Peloso,* 56 N.J. at 520–21, 267 A.2d at 501–02. But IMT did not notify the owners it was declining liability. It merely terminated its offer and, at the most, failed to respond to further inquiries. The owners accordingly were faced with the Hobson's choice of immediately commencing suit and perhaps foregoing potentially fruitful further negotiations, or pursuing further negotiations (as they

did) at risk of IMT's subsequent assertion of the limitation period. The *Peloso* rule thus burdens policyholders with the risk of determining when denial of liability has occurred. Application of the general statute of limitation would avoid this problem of predictability.

Finally, as a matter of public policy, it may be feared that the rule we here adopt will cause insurers to hastily terminate negotiations at the zero hour, leaving the insureds insufficient time to commence action within the twelve-month period. That case is not before us. Other jurisdictions have held, however, that the limitation also is waived if an unreasonably short time for bringing suit remains out of the prescribed period after the insurer has ceased to hold out inducements such as to delay filing of the action. *See Friedberg v. Insurance Co. of North America*, 257 Mich. 291, 294, 241 N.W. 183, 184 (1932); 46 C.J.S. *Insurance* § 1264, at 288 n.46 (1946); Annot., 29 A.L. R.2d 636, 645 n.7 (1953).

We hold the contractual suit limitation period was waived by IMT and that this waiver cannot be retracted. The general limitation statute governing written contracts applies. We reverse the summary judgment entered by district court and remand for trial.

REVERSED AND REMANDED.

All Justices concur except UHLENHOPP, LeGRAND and McGIVERIN, JJ., who dissent and CARTER, J., who takes no part.

UHLENHOPP, Justice (dissenting).

IMT issued a fire insurance policy on a house to Leo A. Lala, Jr. and Donna D. Lala with limits of $8000. The house burned on December 18, 1974. A claim for $8000 was made on the policy. The appeal turns on time limitations, but some preliminary facts need to be considered.

IMT's investigation of the claim disclosed that record title to the house was in Raysel Co. Further investigation disclosed that Raysel Co. was incorporated by Raphael M. Scheetz and that the Lalas had no interest in it.

Leo Lala claimed in answer to subsequent interrogatories that the previous titleholders of the house were Marguerite J. Earl and later Owen Scott. As I understand the record, Lala claimed that one or the other of those titleholders sold the house on contract to Don and Carol Ries, and that the Lalas obtained an unrecorded assignment of that contract from the Rieses. Lala also claimed that Raphael Scheetz was a "silent partner" of Lalas under the assignment.

Scheetz claimed that a deed to the house could not be obtained, and so the taxes on the house were left unpaid and Raysel Co. purchased the house at tax sale and obtained a tax deed. Scheetz further claimed that Lala was a silent partner with him under that deed.

The problem was insurable interest. The Lalas were the insureds in the insurance policy, but the house had gone by tax deed to Raysel Co. Raphael Scheetz owned the Raysel Co. stock, but neither Scheetz nor Raysel Co. was an insured under the policy.

IMT did not pay the claim. Raphael Scheetz contacted various representatives of IMT about payment, but was unsuccessful. Eventually Don L. Parish of IMT made a settlement offer of $5000. Scheetz wanted $8000.

Issuance of a fire insurance policy other than in the statutory standard form is unlawful in Iowa, with certain exceptions not applicable here. Iowa Code § 515.138 *Second* (1979). Section 515.138 *Sixth* provides:

The form of the standard policy (with permission to substitute for the word "company" a more accurate descriptive term for the type of insurer) shall be as follows:

. . . .

*Suit.* No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of the policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

. . . .

IMT's policy contained this statutorily-mandated clause.

The claim did not get settled, and IMT referred it to the law firm of Shuttleworth & Ingersoll. On August 21, 1975, Robert D. Houghton of that firm wrote the claimants as follows:

This letter will confirm IMT's offer to pay all claims on the above policy for $5,000.00. I have spoken with Mr. Lala and he has advised that he would like until September 15, 1975, to consider the offer and is agreeable that the offer terminate after that date. Therefore, please let me hear from you at your convenience concerning this offer. It is my understanding that this offer was made to you orally some time ago by Don L. Parish of IMT.

Later this offer was extended to September 30, 1975.

Raphael Scheetz counseled with Attorney Robert C. Nelson about the claim, and Nelson contacted Houghton. On December 17, 1975, Houghton wrote Nelson as follows:

I have spoken with my client and they have advised that they would be willing to pay $5,500.00 to Leo A. Lala, Jr., Donna D. Lala, Raphael Scheetz and his wife, and Raysel Co., in order to settle all claims regarding the above policy. I have done an extensive investigation into the facts of the case and applicable law and I would be pleased to review this with you.

Please let me know if this will satisfy your clients' claims. Thank you for your cooperation and attention to this matter.

Nelson contacted Raphael Scheetz about the increased offer and advised him, "Take it." Scheetz, however, still wanted $8000, and Nelson so informed Houghton.

On February 13, 1976, Houghton wrote Nelson that IMT's offer was terminated and no new offer would be made. The letter stated:

It is my understanding from previous discussions with you that you represent the above claimants. On December 17, 1975, I wrote you and advised that at that time I had spoken with my clients and IMT was willing to settle the case for $5,500.00. Subsequent to that time you advised me that this offer was rejected and that your clients wanted more money to settle the case. Your counteroffer obviously terminated our offer and we will not be making any new offer of settlement.

At some point thereafter Scheetz took the claim to the law firm of Shea, Jackson & Irwin. On August 31, 1976, John J. Shea of that firm wrote Houghton as follows inquiring whether IMT would "up their offer" to $6000:

I have talked to Leo A. Lala, Jr., Donna D. Lala, and Raphael Scheetz, concerning IMT Standard Fire Insurance Policy for Iowa No. 28259. I know you did state something about some sort of policy defense, but I think the Company had been negotiating with them, and after talking it over I feel that if they will up their offer to $6,000.00, I could settle this matter.

Would you please advise what the position of your Company is in this regard.

In accordance with Houghton's letter of February 13, 1976—that IMT "will not be making any new offer of settlement"—IMT did not respond with another offer.

What happened to the claim during the next two years and four months the record does not disclose. Apparently it simply lay dormant. I do not find any evidence in the record, let alone substantial evidence, that IMT negotiated further during that period. (I also disagree with the majority's statement about IMT, "It merely terminated its offer and, at most, failed to respond to further inquiries." IMT did not merely terminate its offer. It also stated "and we will not be making any new offer of settlement." Accordingly it did not make any new offer.)

On January 11, 1979, the Shea firm brought the present action for the Scheetzes and Lalas (plaintiffs) against IMT, asking $8000 compensatory and $80,000 exemplary damages. The petition and

answer contained the following allegations *inter alia.* Plaintiffs alleged a joint venture and stated in paragraph 5:

5. That Leo A. Lala, Jr., and Donna D. Lala, as participants in the joint venture and as the contract purchasers of certain real estate legally described as [description] had an insurable interest in the described real estate.

IMT averred in division I of its answer:

5. Paragraph 5 is denied.

In addition, plaintiffs alleged that they were not barred by the one-year limitation and that IMT was estopped to assert the limitation. IMT denied these allegations also.

In division II of its answer, IMT alleged affirmatively:

For further affirmative defense defendant alleges that plaintiffs had no insurable interest in the property at the time of the fire.

(The next paragraph was the same but substituted the time the policy issued for the time of the fire.)

IMT also alleged affirmatively that plaintiffs were barred by the one-year limitation.

The time for trial arrived. Plaintiffs filed a "pretrial statement." It contained a summary of their legal claims including these:

That Plaintiffs, individually and collectively, had an insurable interest in the property insured by Policy Number 39833, but that Defendant refused to pay over to Plaintiffs the amount reasonably due them under their insurance contract following the loss on December 18, 1974.

And:

That the actions of the Defendant during this negotiation period were such as to estop Defendant from asserting the one (1) year suit clause provision of the policy herein.

(The next paragraph was the same but substituted waives for estops.)

In its pretrial statement, IMT summarized its legal claims as those set out in its answer filed in the case—which I have previously condensed.

Prior to trial IMT filed a motion for summary judgment alleging that the action was barred as a matter of law by lapse of time. Plaintiffs resisted, and after hearing the district court sustained the motion and dismissed the petition. Plaintiffs appealed.

I. I have no disagreement with the authorities cited by the majority in its first division, or with the proposition that IMT waived the passage of time during negotiations. The last sentence in the first division states, "There remains the issue of the duration of that waiver."

As to the second division, I agree with the Iowa decisions cited by the majority that a waiver once given cannot be retracted. In this case IMT undoubtedly waived the running of the one-year limitation *during the time the parties carried on negotiations,* and IMT could not later retract that waiver. If plaintiffs had promptly sued after IMT announced it would make no further offers, IMT could not have successfully asserted the limitation defense. Moreover, had IMT expressly waived the limitation clause, rather than merely negotiated, it could not later have resurrected the one-year clause. *See O'Connor v. Allemannia Fire Insurance Co.,* 128 Pa.Super. 336, 339–40, 194 A. 217, 218–19 (1937) ("Undoubtedly there may be an express *waiver* of the limitation of suit clause in the policy, and, when there is such a definite *waiver,* it is no longer in force"). But plaintiffs did not promptly sue after IMT announced it would be making no further offers, and IMT did not expressly waive the one-year period.

The Iowa cases the majority cites in division II—with the possible exception of two decisions—do not reach the question of waiver of *future* delay. The majority cites *Bish v. Hawkeye Insurance Co.,* 69 Iowa 184, 28 N.W. 553 (1886); *Mettner v. Northwestern National Life Insurance Co.,* 127 Iowa 205, 103 N.W. 112 (1905); *McDonald v. Equitable Life Assurance Society of the United States,* 185 Iowa 1008, 169 N.W. 352 (1919); *Hemmings v. Home Mutual Insur-*

ance *Association of Iowa,* 199 Iowa 1311, 203 N.W. 818 (1925); *Jerrel v. Hartford Fire Insurance Co.,* 251 Iowa 816, 103 N.W.2d 83 (1960); *Briney v. Tri-State Mutual Grain Dealers Fire Insurance Co.,* 254 Iowa 673, 117 N.W.2d 889 (1962); *Bettis v. Bettis,* 228 N.W.2d 193 (Iowa 1975); and *Dunn v. General Equities of Iowa, Ltd.,* 319 N.W.2d 515 (Iowa 1982).

*Bish* did not involve an offer to settle a claim, a termination of the offer when it was not accepted, and a statement that a new offer would not be made. It involved an "agreement to pay the loss" and a subsequent refusal to do so. *Bish,* 69 Iowa at 185, 28 N.W. at 554. Indeed the court stated, "If he [the insurer's agent] had informed plaintiff of the amount he was authorized to pay, and it had not been accepted, no estoppel would have been raised against defendant." *Id.* at 188, 28 N.W. at 555. The latter is what happened here: in Houghton's December 17th letter he stated his client had advised it would be willing to pay $5500. Scheetz rejected that offer. Not only that; IMT then stated that its offer was terminated and it would not make a new offer.

*Mettner* does not involve the present situation. In that case a life insurance premium was due on July 1. It was mailed on July 2 and was received on July 7. In case of a late premium payment, the insured had 60 days to reinstate. After an exchange of correspondence, the insurer "did not finally return the July premium until plaintiff had lost his right to reinstatement in accord with the terms of his contract." *Mettner,* 127 Iowa at 213, 103 N.W. at 115. This court held that the fact finder could find a waiver on these facts and that the past waiver could not be retracted. A waiver of future acts was not involved.

Neither does *McDonald* involve the question at hand. There the insurer's agent stated that the premium could be paid when the insured returned from St. Paul, Minnesota. The premium was therefore not paid within the grace period. This court held the fact finder could find a waiver of timely payment. Manifestly, the insurer could not then retract the past waiver.

*Hemmings* does not involve the present situation. There the question was whether two encumbrances on property voided a policy as to other unencumbered property. The adjuster and the insurer's secretary learned of the encumbrances. The adjuster made out the proof of loss, secured the insured's signature, "and agreed that the amount of the loss as stated therein should be paid within a few days," and the secretary wrote the insured that " 'if there is any stock burned that was not incumbered or mortgaged, we would be glad to admit liability on them the same as on the hay which you say was not incumbered.' " *Hemmings,* 199 Iowa at 1316–17, 203 N.W. at 820. Obviously these past agreements with the insured could not be unilaterally withdrawn.

*Jerrel* does not involve the present issue. There the suit clause was expressly waived by both the insurer's adjuster and its agent. *Briney* involved a policy clause on the use of the premises, but prior to the fire the insurer's agent was aware of the use to which the premises were being put.

*Bettis* and *Dunn* are not insurance cases but they resemble the present situation in that they differentiate waiver as to *past* acts (here, waiver of plaintiffs' failure to sue during the time the parties negotiated) from waiver of future acts (nonwaiver of future delay after IMT stated its offer was terminated and it would not make a new offer). *Bettis* involved waiver of payments under an installment land contract. We stated:

> One who has waived the time for performance may, of course, withdraw the waiver if he then affords the other party a reasonable opportunity to perform the conditions of the contract which were waived.

*Bettis,* 228 N.W.2d at 195. *Dunn* involved late payments on notes. We stated, "The right to withdraw a waiver of time for performance upon reasonable notice has been recognized previously by this court [citing *Bettis* ]." *Dunn,* 319 N.W.2d at 517.

II. In this case waiver of time during the parties' negotiations extended to Febru-

ary 1976 when Nelson received Houghton's letter that IMT's offer was terminated and that IMT would not be making any new offers. The specific question is, *how long did plaintiffs have after February 1976 to commence action?* Plaintiffs claim the ten-year statute applied. Iowa Code § 614.1(5) (1979). IMT claims plaintiffs had to sue within a reasonable time after February 1976, not exceeding a year.

What was the effect of the delay brought about by the parties' negotiations on the statutory one-year clause in the policy? The parties agree that the negotiations *extended* the time to sue, but plaintiffs claim further that the negotiations *extinguished* the one-year clause for the future and relegated IMT to the general statute of limitations which applies in actions on written contracts.

Some courts do indeed hold that after negotiations or similar conduct a policy time-clause is of no effect. *O'Brien v. Country Mutual Insurance Co.,* 105 Ill. App.2d 21, 24, 245 N.E.2d 30, 32 (1969) ("Once the insurer waives the policy limitation provision, the limitation cannot be revived and the case will be barred only by the regular statutory limitation."); Annot., 29 A.L.R.2d 636, 646–47 (1953).

Other courts state that the terms waiver and estoppel are used loosely in this area, and that the time clause is tolled but not nullified by negotiations. As stated in *O'Connor,* 128 Pa.Super. 336, 339–40, 194 A. 217, 218–19 (1937):

> Some confusion has resulted from a careless and, perhaps, not wholly accurate use in the decisions of the words "waived" and "waiver" in connection with the clause in the policy limiting the time within which an action may be brought upon it, when what was really meant was such conduct on the part of the insurer or its authorized representatives as to excuse the insured from strict compliance with the terms of the policy and to extend the period for bringing suit. This result may have been contributed to by applying to a mere extension of the limitation of suit clause in the

policy the same effect as the law attaches to an express or implied waiver of proofs of loss, or waiver of ground of forfeiture or avoidance of the policy, which are of a nature that, once waived, they cannot be revived and thereafter insisted upon the insurer, unless the waiver was obtained by fraud on the part of the insured. 32 C.J. 1355, § 640; *O'Brien v. Sovereign Camp,* 122 Pa.Super. 39, 46, 184 A. 546. Undoubtedly there may be an express *waiver* of the limitation of suit clause in the policy, and, when there is such a definite *waiver,* it is no longer in force and thereafter, the *statutory* limitation as to contracts applies; but our Supreme Court has ruled that, when the insured seeks to excuse his failure to bring suit within the period of time fixed in the policy by conduct of the insurer which misled the insured to his injury—the failure of the insured to bring suit within the prescribed time being due to the insurer's act or conduct—the limitation has not been fully and completely *waived,* in the strict sense of the word, but has only been suspended or extended, and begins to run when the insurer's conduct no longer excuses the insured's failure to bring suit.

After referring to an earlier case, the court stated in *Insurance Company of North America v. Board of Education,* 196 F.2d 901, 904 (10th Cir. 1952) (applying Oklahoma law):

> This language clearly indicates that Oklahoma did not use the word "waiver" in the sense that it constituted a complete relinquishment, extinguishment and abandonment of the right to assert the one year statutory period of limitation. The language is that the limitation provision *is waived for a reasonable time after denial of liability.* This language is inconsistent with the holding that waiver is a voluntary relinquishment of a right which thereafter disappears from the case. It can only mean that such acts as the Board relies on in this case operate to suspend the running of the statute of limitations until denial of liability and

that thereafter the statute begins to run again and, if insufficient time remains to institute the action within the year, the insured may have a reasonable time thereafter to bring his action.

Annot. 29 A.L.R.2d 636, 647–48 (1953); 18 *Couch on Insurance 2d* § 75:171, at 816–17 (R. Anderson 1968); 20A Appleman, *Insurance Law & Practice* § 11639, at 551 (rev. ed. 1980).

The latter courts, however, are divided into two lines on the time period the insured has in which to sue after the conduct raising the waiver or estoppel ceases to be operative. One line holds the insured has a year or a "reasonable time" not exceeding a year (assuming the time period in the clause is a year). Examples are *Insurance Company of North America,* 196 F.2d at 904 (one-year clause; fifteen months from loss to denial of claim; sixteen more months to suit: "Whether the insured thereafter institutes his action within a reasonable time may in some cases become a question of fact, but in any event he could not have more time than the time he would have had but for the dilatory acts of the Company, which was one year. When the insured, as here, takes more than sixteen months after denial of liability by the Company to institute his action, when if denial of liability had been made promptly he would have had only one year, it must be said as a matter of law that the action is barred."); *Gallant v. Federal Mutual Insurance Co.,* 354 Mass. 146, 151, 235 N.E.2d 810, 813 (1968) (two-year clause; damage May 4, 1962; negotiation ended May 29, 1964; suit May 1, 1965: "In our opinion, the plaintiffs, in any event, cannot recover because they did not commence their actions reasonably promptly after May 29, 1964."); *Cody v. Insurance Company of Oregon,* 253 Or. 587, 594, 454 P.2d 859, 862 (1969) (one-year clause; damage October 12, 1962; denial of coverage about Christmas 1962; coverage discovered September 23, 1964; suit was timely on September 20, 1965: "After the estoppel was removed . . . plaintiff had a year within which to bring the action."); *O'Connor,* 128 Pa.Super. at 347, 194 A. at 221 (one-year clause; fire November 12, 1924; nego-

tiations to January 1926; suit December 1, 1927: "As the insured in this case waited nearly two years after the company denied all liability under the policy, without any representations or acts by the company inducing further delay in the bringing of suit, we agree with the court below that as a matter of law the action was brought too late."); *Dickson v. United States Fidelity & Guaranty Co.,* 77 Wash.2d 785, 788, 466 P.2d 515, 517 (1970) (one-year clause; damage August 1, 1963; claim rejected July 14, 1964; suit was timely on February 8, 1965: "Plaintiffs had a reasonable time after notification of the final denial of liability to commence their action."). *Cf.* Annot., 44 A.L.R.3d 760 (1972) (analogous rule in other types of cases).

The second line of decisions, although also containing variations, is more specific on the time period under the policy clause. These cases hold, in general, that the year (or other period in the clause) begins to run with the occurrence of the loss and continues to run until the insured gives notice to the insurer; the running is then suspended during performance of policy clauses and negotiations and it resumes when the insurer declines the claim.

The decision which initiated this view is *Peloso v. Hartford Fire Insurance Co.,* 56 N.J. 514, 267 A.2d 498 (1970). There the fire occurred on September 12 and 13, 1965. The insured gave notice of loss and filed proof of loss, and the parties had negotiations until June 15, 1966, when the insurer's attorney declined the claim by letter. The insured sued on March 10, 1967—more than a year from the time of the fire but less than a year from the time of the letter turning down the claim.

The *Peloso* court emphasized that under normal conditions an insured does not actually have a full year to sue. The insured Peloso had sixty days to file a proof of loss (corresponding to the clause in our section 515.138, *Requirements in case loss occurs*), and the insurer Hartford had sixty days after proof of loss to pay the claim (our clause in section 515.138, *When loss payable*). The court stated:

312

There obviously is an incongruity in the statute. While the limitation provision purports to give the insured a clear 12 months to institute suit, yet, by virtue of the other statutory provisions cited above, this period is greatly reduced. Nonetheless, we think that the central idea of the limitation provision was that an insured has 12 months to commence suit. This must be so since the period is much shorter than the usual 6 years for ordinary contracts and 16 years for contracts under seal. In addition, the period during which an insured's right to bring suit is postponed is for the benefit of the company so that it can pursue its statutory and contractual rights. Accordingly, it ought not to be charged against the insured's time to bring suit.

The incongruity in the statute and the unfairness caused to an insured is amply demonstrated by the facts in the present case. Plaintiffs gave notice 2 days after the fire. They then had 60 days to file a proof of loss and the insurance company had a further 60 days to decide its liability. During this time, plaintiffs were barred by the statute from instituting suit. Negotiations were still continuing in February 1966, when plaintiffs threatened to sue. In response, defendant demanded that plaintiffs submit to interrogatories as required under the cooperation clause of the policy. Plaintiffs did so on April 6, 1966. It was not until June 15, 1966, that plaintiffs were notified in writing that liability was declined.

The fair resolution of the statutory incongruity is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined. In this manner, the literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit. We think this approach is more satisfactory, and more easily applied, than the pursuit of the concepts of waiver and estoppel in each of the many factual patterns which may arise.

In the instant case 2 days had transpired between the start of the fire and the date notice was given thereof to defendant. Thereafter, the parties negotiated for 9 months. During this time, the statute was tolled. It did not begin to run again until June 15, 1966, when plaintiffs were notified in writing that liability was denied. Plaintiffs then had 12 months less 2 days to institute suit. Since they did so within 9 months of June 15, 1966, plaintiffs' suit was timely and summary judgment was improper.

*Id.* at 520–21, 267 A.2d 501–02.

The Alaska Supreme Court independently reached the same result in *Fireman's Fund Insurance Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 227 (Alaska 1973) ("We therefore hold that 'inception of the loss' means the date on which the insurance company denies coverage, that is, the date on which the cause of action accrues."). Adopting the *Peloso-Sand Lake* rationale are *Nicholson v. Nationwide Mutual Fire Insurance Co.*, 517 F.Supp. 1046 (N.D.Ga.1981) (applying Georgia law); *Tom Thomas Organization, Inc. v. Reliance Insurance Co.*, 396 Mich. 588, 242 N.W.2d 396 (1976); and *Clark v. Truck Insurance Exchange*, 95 Nev. 544, 546, 598 P.2d 628, 629 (1979) (no showing that insurer ever broke off negotiations, hence one-year policy clause never resumed running: "We construe the clause to allow the period of limitations to run from the date of the casualty, but the period will be tolled from the time appellant gave notice of the loss until respondent formally denies liability. This construction preserves the literal language of the limitation provision by providing that the insured will have only 12 months to institute suit, but does not penalize the insured for the time consumed by the insurer while it pursues contractual rights to receive a proof of loss or negotiate payment with the insured." (Citation omitted.)).

III. An Iowa case which does involve the present problem is *Goodwin v. Merchants' & Bankers' Mutual Insurance Co.,* 118 Iowa 601, 92 N.W. 894 (1902). That case, however, is indecisive as to the applicable rule:

> It is next said that, even if the limitation in the policy be held to have been waived by the company, it did not give the plaintiff a right to sue at any time within the general statute, but that she must proceed to bring suit within a reasonable time after the waiver has been made. For the purposes of the present case the correctness of this proposition may be conceded. The agreement to arbitrate and the dismissal of the first suit took place in October, 1896. Thereafter various negotiations were had by correspondence and otherwise between the parties, and, agreement upon the arbitration not being arrived at, this action was begun upon April 10, 1897. We think the court may say she moved with reasonable promptness.

*Id.* at 608, 92 N.W. at 896.

IV. I think the *Peloso* rule should be adopted in Iowa. It preserves the period for suit prescribed by the General Assembly; it gives the insured his full year to sue after deducting delays induced by the insurer; it allows the parties freedom to negotiate without loss of rights on either side; and it simultaneously provides a definite period of limitation rather than a more amorphous "reasonable time."

At the time IMT made its last offer, December 17, 1975, the running of the one-year limitation had been tolled by negotiations and had not yet resumed running, under the *Peloso* doctrine. But in February 1976, when IMT terminated its offer and stated it would not be making any new offer, the one-year limitation resumed running. Under no interpretation of the facts did plaintiffs thereafter sue within a year period as measured by *Peloso.* Instead, plaintiffs waited two years and four months to sue. I think the district court correctly

sustained the motion, and I would affirm the judgment.

LeGRAND and McGIVERIN, JJ., join in this dissent.