# In the Iowa Supreme Court

No. 25–0285

Submitted April 15, 2026—Filed May 8, 2026

**Leroy Cole,** personally and as executor of the **Estate of Betty Ann Cole,**

Appellant,

vs.

**Arbor Court Healthcare LLC, Midwest Geriatric Management LLC, MGM Healthcare, Arbor Court Realty LLC, Southeast Iowa Orthopaedics and Sports Medicine, PC,** and **Michael W. Hendricks,**

Appellees,

Appeal from the Iowa District Court for Henry County, Shane M. Wiley, judge.

Interlocutory appeal from an order granting the defendants' motion to compel arbitration. **Reversed and Case Remanded.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Benjamin Bergmann (argued), Clinton Luth, and Carly Scott of Parrish Kruidenier L.L.P., Des Moines, for appellant.

Graham R. Carl (argued) and Tricia Hoffman-Simanek of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellees Arbor Court Healthcare, LLC, Midwest Geriatric Management, LLC, MGM Healthcare, and Arbor Court Realty, LLC.

**McDonald, Justice.**

This is an appeal concerning the enforceability of an arbitration agreement. Arbor Court is a skilled nursing care facility.[1] Arbor Court presented an arbitration agreement to one of its residents, Betty Cole. Betty signed the arbitration agreement. She died twelve days later. Her husband, Leroy Cole, individually and as the executor of Betty's estate, filed this suit in the district court against Arbor Court and other defendants. Cole asserted claims for negligence, gross negligence, wrongful death, and dependent adult abuse, among others. After litigating the case in the district court for almost one year, Arbor Court moved to compel arbitration. Cole resisted the motion, arguing that the arbitration agreement was procedurally unconscionable and that Arbor Court waived its contractual right to arbitration by availing itself of the litigation process in the district court. The district court granted the motion, and this court granted Cole's application for interlocutory appeal. On review for the correction of errors at law, *see Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999), we conclude the district court erred in granting the motion to compel because Arbor Court waived its contractual right to arbitration. Because we conclude Arbor Court waived its contractual right, we need not address Cole's argument regarding procedural unconscionability.

A contractual right to arbitration, like all contract rights, may be waived, *Mod. Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc.*, 581 N.W.2d 616, 619 (Iowa 1998), *overruled in part on other grounds by*, *Wesley Ret. Servs.*, 594 N.W.2d 22. Iowa precedents have provided that "[t]he essential test for waiver of

---

[1]The entities alleged to be involved in the ownership and management of Arbor Court and named as defendants in this case include Arbor Court Healthcare LLC, Midwest Geriatric Management LLC, MGM Healthcare, and Arbor Court Realty LLC. We refer to them collectively as "Arbor Court."

arbitration requires conduct or activity inconsistent with the right to arbitration *and* prejudice to the party claiming waiver." *Wesley Ret. Servs.*, 594 N.W.2d at 30 (quoting *Clinton Nat. Bank v. Kirk Gross Co.*, 559 N.W.2d 282, 284 (Iowa 1997)). The two leading cases in Iowa are *Modern Piping* and *Wesley Retirement Services.* In *Modern Piping,* this court held that a subcontractor waived its right to arbitrate when it initiated suit in district court and then engaged in eighteen months of litigation—utilizing discovery methods unavailable in arbitration— before moving to compel arbitration only five days before trial. 581 N.W.2d at 621. By contrast, in *Wesley Retirement Services,* this court held that the contractual right to arbitrate was not waived where the party seeking to compel arbitration did not initiate the litigation, engage in discovery, or wait until the eve of trial to move to compel. 594 N.W.2d at 30.

Based on the parties' briefing, the district court applied *Modern Piping* and *Wesley Retirement Services* to the facts of this case. It concluded the facts more closely resembled *Wesley Retirement Services.* The district court found there was "limited prejudice to the Plaintiffs." While "[s]ome discovery [had] been provided to Arbor Court," there was no "evidence provided to suggest that it [had] been extensive." In addition, the district court explained that when Arbor Court moved to compel arbitration, "the trial date was still almost sixteen months into the future."

On appeal, the parties continue to contest whether Arbor Court waived its contractual right to arbitrate this dispute under the two-part test set forth in *Modern Piping* and *Wesley Retirement Services.* But that two-part test is inapplicable here. The parties agree that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, applies, and we agree with that conclusion. The arbitration agreement at issue contains an interstate-commerce provision, and Arbor Court

submitted an affidavit from the administrator of Arbor Court showing that Arbor Court is engaged in interstate commerce. While the parties agree that the FAA applies here, they did not address a recent United States Supreme Court decision holding that arbitration-specific waiver tests are preempted by the FAA. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022).

In *Morgan v. Sundance, Inc.*, the Supreme Court took up the question of whether the "FAA authorize[d] federal courts to create" an arbitration-specific rule where "[a] party can waive its arbitration right by litigating only when its conduct has prejudiced the other side." *Id.* at 413–14. The Court held that federal courts could not create such a rule. *Id.* The Court explained that the FAA was intended "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Id.* at 418 (quoting *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 302 (2010)). "Or in another formulation: The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.' " *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). Under the FAA, a court "must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." *Id.* The Court explained that the FAA bars the use of "custom-made rules, to tilt the playing field in favor of (or against) arbitration." *Id.* at 419. Because "the usual federal rule of waiver does not include a prejudice requirement," the FAA "instructs that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Id.*

While *Morgan* speaks directly to federal courts, the same principle applies with equal force to state courts. Section 2 of the FAA establishes "an equal-

treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue' " *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Under that principle, the FAA "preempts any state rule discriminating on its face against arbitration." *Id.*

Iowa's test set forth in *Modern Piping* and *Wesley Retirement Services* is a legal rule that derives its meaning from the fact that an agreement to arbitrate is at issue. Under Iowa contract law, waiver is "the voluntary or intentional relinquishment of a known right." *Scheetz v. IMT Ins. (Mut.)*, 324 N.W.2d 302, 304 (Iowa 1982) (en banc) (quoting *Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982)); *see also EMC Ins. Grp. v. Shepard*, 960 N.W.2d 661, 672 (Iowa 2021). "The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such a right." *EMC Ins. Grp.*, 960 N.W.2d at 672 (quoting *DuTrac Cmty. Credit Union v. Hefel*, 893 N.W.2d 282, 292 (Iowa 2017)). Establishing prejudice is not part of that test. *In re Guardianship & Conservatorship of Collins*, 327 N.W.2d 230, 233–34 (Iowa 1982) (stating that waiver of contractual rights does not require a showing of prejudice). Thus, the arbitration-specific two-part test that requires a showing of prejudice is different from our law regarding the waiver of contractual rights. This contravenes the Supreme Court's instruction that the FAA precludes a court from "devis[ing] novel rules to favor arbitration over litigation." *Morgan*, 596 U.S. at 418.

Because the two-part test in *Modern Piping* and *Wesley Retirement Services* imposes a prejudice requirement to establish waiver unique to arbitration

agreements, it is preempted by the FAA, where the FAA is applicable. *See CNU of Ala., LLC v. Cox*, 416 So. 3d 154, 161–62 (Ala. 2024) ("[A] recent case from the United States Supreme Court requires us to modify our longstanding test for determining whether there has been waiver of an arbitration claim. . . . [T]he prejudice requirement is no longer good law." (citations omitted)); *Quach v. Cal. Com. Club, Inc.*, 551 P.3d 1123, 1132 (Cal. 2024) ("While *Morgan* is not binding when the CAA's procedural rules apply, our state law arbitration-specific prejudice rule is based on the federal appellate authority that *Morgan* disapproved."); *Kingery Constr. Co. v. 6135 O St. Car Wash, LLC*, 979 N.W.2d 762, 770–71 (Neb. 2022) (holding that *Morgan* required Nebraska to overrule its prior test for waiver of arbitration agreements based on litigation conduct and remanding for the district court to apply ordinary waiver standards); *Dall. Excavation Sys., Inc. v. Orellana*, 697 S.W.3d 702, 709 (Tex. Ct. App. 2024) ("[B]ased on *Morgan,* we conclude a showing of prejudice is no longer required in order to establish waiver, at least in cases involving the FAA.").

In light of *Morgan* and the parties' agreement that the FAA controls here, we must apply generally applicable principles of contract law to determine whether Arbor Court impliedly waived its contractual right to arbitrate. As noted above, waiver is "the voluntary or intentional relinquishment of a known right." *Scheetz*, 324 N.W.2d at 304 (quoting *Travelers*, 317 N.W.2d at 186). Waiver may be express or implied. *Id.* "When the waiver is implied, intent is inferred from the facts and circumstances constituting the waiver." *Id. Scheetz v. IMT Insurance (Mutual)* is the controlling case with respect to the implied waiver of contractual rights. *See id.* In that case, homeowners contracted with an insurance company to insure their residence under a fire policy containing a contractual limitations provision. *Id.* at 303. The provision required any suit on the policy to be

commenced within twelve months of the loss. *Id.* Following a loss, the parties engaged in settlement negotiations beyond the twelve-month contractual limitation period. *Id.* At no point during those negotiations did the insurer invoke or reserve the contractual limitation defense. *Id.* When negotiations were unsuccessful and the homeowners filed suit, the insurer moved for summary judgment based on the contractual limitation. *Id.* The district court granted summary judgment. *Id.* at 303–04. This court reversed, holding that the insurer had waived the contractual defense. *Id.* at 304. By "carr[ying] the negotiations through the end of the twelve-month period[,] [the insurer] could have had no other intent than to relinquish its contractual right to limit suits to that period." *Id.*

A recent federal decision applying general rules regarding contractual waiver post-*Morgan* is instructive with respect to the implied waiver question presented here. In *Thomas v. Pawn America, Minnesota, LLC* (*In re Pawn America Consumer Data Breach Litigation*), the parties seeking to compel arbitration litigated in district court for several months before invoking their arbitration right. 108 F.4th 610, 612–13 (8th Cir. 2024). The court explained that, under *Morgan*, the waiver question "boil[ed] down to" whether the party had "intentional[ly] relinquish[ed] or abandon[ed] . . . a known right." *Id.* at 613 (second, third, and fourth alterations and omission in original) (quoting *Morgan*, 596 U.S. at 417). One way parties impliedly relinquish the right to arbitrate, the court observed, is by "substantially invok[ing] the litigation machinery rather than promptly seek[ing] arbitration." *Id.* at 614 (quoting *McCoy v. Walmart, Inc.*, 13 F.4th 702, 703 (8th Cir. 2021)). The defendants in *Pawn America* raised multiple affirmative defenses without mentioning arbitration, participated in developing a joint discovery plan, requested and attended a pretrial conference,

and fully argued a motion to dismiss. *Id.* They chose to wait until after the hearing on the motion to dismiss to invoke their arbitration right. *Id.* at 615. The United States Court of Appeals for the Eighth Circuit held that this conduct constituted waiver. *Id.* It reasoned that the parties' extensive participation in the litigation was "hardly the actions of [litigants] trying to move promptly for arbitration." *Id.* (alteration in original) (quoting *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 857 (8th Cir. 2021)). Instead, their actions "substantially invoke[d] the litigation machinery," which evinced an intention to relinquish their contractual right. *Id.* (alteration in original) (quoting *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1087 (8th Cir. 2021)).

Like the insurer in *Scheetz* and the defendants in *Pawn America*, Arbor Court impliedly waived its contractual right. *See Scheetz*, 324 N.W.2d at 304 ("When the evidence is undisputed, . . . the issue [of waiver] is one of law for the court."). First, a right existed. It is undisputed that Betty signed an arbitration agreement. The agreement contained an arbitration provision covering disputes arising out of the care provided by Arbor Court.

Second, Arbor Court had knowledge of the right. Arbor Court was in possession of the arbitration agreement. Arbor Court's counsel became aware of the arbitration agreement no later than October 2023. On October 31, 2023, Arbor Court's counsel sent a letter to plaintiff's counsel requesting that the claims be submitted to arbitration.

Third, Arbor Court's conduct demonstrated an intention to relinquish its contractual right to arbitrate. Cole filed his petition in June 2023. Arbor Court responded by filing its answer and asserting affirmative defenses; it did not plead arbitration as an affirmative defense. Arbor Court participated in the trial scheduling conference, and the district court set a date for trial. On October 31,

Arbor Court's counsel sent the letter described above, demanding arbitration. Plaintiff's counsel responded the following day: "We are in receipt of your request to agree to arbitration. We decline." Arbor Court did not move to compel arbitration in the face of Cole's refusal. Instead, it continued to litigate and employ district court discovery processes. Arbor Court served initial disclosures. It served the plaintiff with interrogatories and requests for the production of documents. The plaintiff served answers to the interrogatories and responses to the requests for production. Arbor Court supplemented its initial disclosures. After the plaintiff designated expert witnesses, Arbor Court served additional interrogatories and requests for the production of documents on the plaintiff, and the plaintiff served supplemental answers. All the while, the plaintiff's discovery requests remained unanswered by Arbor Court. Only after the plaintiff was preparing to move to compel discovery did Arbor Court finally move to compel arbitration in May 2024—eleven months after the petition was filed, nine months after Arbor Court filed its answer, seven months after the plaintiff explicitly rejected Arbor Court's request to submit this case to arbitration, months after obtaining discovery from the plaintiff, and weeks after serving supplemental interrogatories and requests for production of documents.

We acknowledge that the October 31 demand, standing alone, was an act asserting—not relinquishing—the arbitration right. Arbor Court contends that the seven-month interval between that demand and its motion to compel is explained by the need to investigate the agreement's enforceability, including Betty's cognitive capacity at the time of signing. But whatever Arbor Court's subjective intentions during that interval, its objective conduct in the district court was inconsistent with any intent to preserve the right to arbitrate. A party that demands arbitration but then serves extensive discovery and waits seven

months after refusal to file a motion to compel arbitration has demonstrated through its actions an intention to resolve the dispute through litigation in the district court, not arbitration. *See Quach*, 551 P.3d at 1139 (applying general contract law post-*Morgan* and concluding the party waived its right to compel arbitration where it "actively engaged in discovery" and did not move to compel arbitration for thirteen months).

The undisputed facts show Arbor Court "could have had no other intent than to relinquish its contractual right" to compel arbitration. *Scheetz*, 324 N.W.2d at 304. We therefore reverse the district court's order granting the motion to compel arbitration and remand this matter to the district court for further proceedings.

**Reversed and Case Remanded.**